MAINE SUPREME JUDICIAL COURT                               Reporter of Decisions
Decision:    2014 ME 29
Docket:      Yor-13-250
Argued:      January 15, 2014
Decided:     February 25, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR,
             JJ.

## STATE OF MAINE

v.

## AARON S. LOWDEN

ALEXANDER, J.

[¶1]  Aaron S. Lowden appeals from a judgment of conviction of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1) (2013), entered by the Superior Court (York County, *O'Neil, J.*) following a jury trial.[1]

[¶2]  Lowden argues that the evidence presented at trial was insufficient to support the jury's guilty verdict and, accordingly, that the court erred in denying his motion for a judgment of acquittal pursuant to M.R. Crim. P. 29.  Specifically, Lowden argues that the State failed to introduce evidence that he successfully manufactured methamphetamine.  *See* 17-A M.R.S. § 1101(4) (2013).  Because the record does not include sufficient evidence from which a jury could rationally

---

[1]  Lowden and the State stipulated to Lowden's prior convictions for drug related offenses, which elevated the charge of unlawful trafficking in schedule W drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2013), to aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1) (2013).

2

conclude, beyond a reasonable doubt, that the defendant completed the manufacture of methamphetamine, a necessary element of unlawful trafficking in schedule W drugs via the manufacture of the drug, *see* 17-A M.R.S. §§ 1101(4), (17)(A), 1103(1-A)(A) (2013), we vacate the judgment of conviction against Lowden for aggravated trafficking of scheduled drugs and remand the matter to the trial court for entry of a judgment of acquittal.

## I. CASE HISTORY

[¶3] Viewing the evidence in the light most favorable to the State and the jury's verdict, the evidence could rationally support finding the following facts. *See State v. Carey*, 2013 ME 83, ¶ 3, 77 A.3d 471.

[¶4] In January of 2012, a woman rented a room on the second floor of her home in Lebanon to Lowden. On January 14, 2012, Lowden began making regular trips from his room on the second floor to the basement, where, as far as the homeowner knew, Lowden had no belongings stored. When the homeowner opened the basement door to investigate Lowden's activities, she smelled a strange odor and called the police.

[¶5] A York County Sheriff's Deputy responded to the call. Upon arriving at the residence, he found that the basement door had been barricaded with a trash can. He yelled down to the basement and requested that Lowden come up, but

Lowden instead asked the deputy to come down. The deputy removed the trashcan and entered the basement.

[¶6] Once in the basement, the deputy observed Lowden standing in front of an inactive wood stove with a Coleman cooking stove placed on top of it. On the Coleman stove were two glass containers, one of which contained a boiling substance. Lowden was tending to the stove and the boiling substance was emitting fumes. The deputy turned off the Coleman stove; evacuated the home; and contacted the fire department, the rescue unit, and the Maine Drug Enforcement Agency (MDEA).

[¶7] The Clandestine Lab Response Team, part of the MDEA, responded to the residence. After conducting a safety sweep of the residence, the team conducted and filmed a pre-search walk-through during which they discovered various chemicals in the bedroom Lowden was renting. The team later searched Lowden's bedroom and found a book known as "Uncle Fester's Synthetic Manual" as well as various chemicals and glassware.[2] The team then searched the basement where Lowden had been apprehended. There, they found additional chemicals and laboratory equipment. The team took samples of the substances found in the basement, which were then tested in a laboratory.

---

[2] "Uncle Fester's Synthetic Manual" is a book entitled "Advanced Techniques of Clandestine Psychedelic & Amphetamine Manufacture." Testimony at trial described it as a "how to" cookbook for the manufacture of illicit drugs.

4

[¶8]  "Uncle Fester's Synthetic Manual," the book recovered in Lowden's bedroom, contained a detailed method of how to convert phenylalanine into methamphetamine.  The chemicals found at the scene constituted some of the "key components sufficient for the manufacture of methamphetamine" through the method described in the book.  However, no methamphetamine was found, nor was there evidence that any of the syntheses necessary to manufacture methamphetamine had occurred.  Furthermore, and as the trial court found in ruling on a post-judgment motion, Lowden did not have all of the ingredients necessary to complete the manufacture of methamphetamine.

[¶9]  On June 5, 2012, Lowden was indicted by a grand jury for aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1).  A jury trial was held beginning on April 22, 2013.  At the close of the trial, the court, without objection by Lowden or the State, instructed the jury correctly on both unlawful trafficking in schedule W drugs, 17-A M.R.S. § 1103(1-A)(A), and attempted trafficking in schedule W drugs, 17-A M.R.S. §§ 152(1)(B), 1103(1-A)(A) (2013).  The instruction on the trafficking charge indicated, consistent with the trafficking statute, that Lowden could be convicted if the jury found beyond a reasonable doubt that he engaged in intentional or knowing conduct.

[¶10]  On April 26, 2013, the jury returned a guilty verdict on the charge of unlawful trafficking in schedule W drugs.  The jury, having returned a guilty verdict on the more serious charge, was not asked to return a verdict on the lesser offense of attempted trafficking, and the State did not request that the jury give further consideration to the attempt charge.

[¶11]  Lowden moved for a judgment of acquittal pursuant to M.R. Crim. P. 29 on the grounds that no reasonable jury could have concluded, based on the evidence presented at trial, that he unlawfully trafficked in methamphetamine. The court denied Lowden's motion, despite issuing findings of fact stating that it was "apparent that [Lowden] did not have in his possession all [of the] ingredients necessary to complete [the manufacture of] methamphetamine."  The court sentenced Lowden to seven years in prison.

[¶12]  Lowden timely appealed his conviction pursuant to 15 M.R.S. § 2115 (2013) and M.R. App. P. 2.  He argues that there was insufficient evidence from which a jury could rationally conclude that he unlawfully trafficked in a schedule W drug via the manufacture of methamphetamine.  *See* 17-A M.R.S. §§ 1101(4), 1103(1-A)(A).  Specifically, he argues that in order to be convicted of unlawful trafficking in scheduled drugs via the manufacture of methamphetamine, the State must prove that he completed the manufacture of methamphetamine, which the State failed to establish in this case.  He further argues that to interpret

the term "[m]anufacture" within the meaning of 17-A M.R.S. § 1101(4), to require preparation or processing without the completed product, runs afoul of the rules of statutory construction by rendering the criminal attempt statute, 17-A M.R.S. § 152, surplusage.

## II. LEGAL ANALYSIS

### A. Standard of Review

[¶13] We review the denial of a motion for a judgment of acquittal under the same standard as a challenge to the sufficiency of the evidence, that is, by "viewing the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Severy*, 2010 ME 126, ¶ 8, 8 A.3d 715 (alteration omitted). "If statutory interpretation is necessary, that interpretation is conducted de novo." *Id.*

[¶14] When interpreting a statute, we look first to the plain meaning in order to discern legislative intent, viewing the relevant provision in the context of the entire statutory scheme to generate a harmonious result. *Id.* ¶ 9. Words are to be construed according to their common meaning. *Id.* "Nothing in a statute may be treated as surplusage if a reasonable construction applying meaning and force is otherwise possible." *State v. Harris*, 1999 ME 80, ¶ 3, 730 A.2d 1249 (alteration omitted).

[¶15]    When interpreting a criminal statute, we are guided by two interrelated rules of statutory construction: the rule of lenity, *see State v. Stevens*, 2007 ME 5, ¶ 16, 912 A.2d 1229; and the rule of strict construction, *see State v. Nastvogel*, 2002 ME 97, ¶ 6, 798 A.2d 1114.  Pursuant to each of these rules, any ambiguity left unresolved by a strict construction of the statute must be resolved in the defendant's favor.  *Stevens*, 2007 ME 5, ¶¶ 16, 18, 912 A.2d 1229 ("[T]he rule of lenity is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislature, not in the judicial department." (citing *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820))); *State v. Shepley*, 2003 ME 70, ¶ 15, 822 A.2d 1147.

B.    Statutory Definition of Manufacture

[¶16]  A person is guilty of aggravated trafficking of scheduled drugs if the person violates 17-A M.R.S. § 1103(1-A), and, at the time of the offense, the person has one or more prior convictions for any Class A, B, or C drug offense.[3] 17-A M.R.S. § 1105-A(1)(B).  A person is guilty of unlawful trafficking in schedule W drugs pursuant to 17-A M.R.S. § 1103(1-A)(A) if the person (1) intentionally or knowingly (2) traffics in (3) what the person knows or

---

[3]  Because of the aggravating factor, Lowden's conviction was agreed to by stipulation and not left for the jury to decide, *see* 17-A M.R.S. § 1105-A(1)(B), and Lowden's challenge on appeal deals exclusively with the statutory interpretation of unlawful trafficking in schedule W drugs, *see* 17-A M.R.S. § 1103(1-A)(A), we refer to the elements of unlawful trafficking in schedule W drugs when evaluating the sufficiency of the evidence to support Lowden's conviction.

believes to be a scheduled drug, which (4) is in fact a scheduled drug and (5) the drug is a schedule W drug. To "[t]raffick," in this context, means "[t]o make, create, manufacture." 17-A M.R.S. § 1101(17)(A). To "[m]anufacture" means "to produce, prepare, propagate, compound, convert or process, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis." 17-A M.R.S. § 1101(4).

[¶17]  Although the definition of "[m]anufacture" could appear to suggest that mere preparation or processing of chemicals may be sufficient, when the language is read in the context of the crime of unlawful trafficking in scheduled drugs, it is clear that preparation and processing, without more, is insufficient. Unlawful trafficking in scheduled drugs mandates not only that a person "trafficks" in a drug, but that the drug "is in fact a scheduled drug." 17-A M.R.S. § 1103(1-A). One cannot "prepare" or "process," and therefore traffick in, a drug that "is in fact a scheduled drug" without a scheduled drug ultimately being produced. 17-A M.R.S. §§ 1101(4), 1103(1-A); *see Shepley*, 2003 ME 70, ¶ 15, 822 A.2d 1147 (stating that courts must not construe statutory language "in a manner that creates an absurd, illogical, or inconsistent result").

[¶18]  This interpretation is corroborated by an examination of the relationship between unlawful trafficking in scheduled drugs via manufacture and the criminal attempt statute, which provides

**1.** A person is guilty of criminal attempt if, acting with the kind of culpability required for the commission of the crime, and with the intent to complete the commission of the crime, the person engages in conduct that in fact constitutes a substantial step toward its commission and the crime is:

. . . .

> **B.** A Class A crime. Violation of this paragraph is a Class B crime;

. . . .

A substantial step is any conduct that *goes beyond mere preparation* and is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.

17-A M.R.S. § 152 (1) (emphasis added). To interpret "[m]anufacture" pursuant to 17-A M.R.S. § 1101(4) to require only "mere preparation" and processing of ingredients, without more, would allow defendants to be convicted of attempted unlawful trafficking or unlawful trafficking based on the same actions. This runs afoul of the rules of construction by making the crime of criminal attempt redundant, yet carrying a lesser penalty. *See State v. White*, 2001 ME 65, ¶ 4, 769 A.2d 827 (stating that statutes will be interpreted as being free of "unnecessary and superfluous language").

[¶19] We will attempt to harmonize inconsistent provisions within a statutory scheme if at all possible in order to give effect to the Legislature's intent. *Id.* The most appropriate way to harmonize the definition of manufacture with the

criminal attempt statute is to require that a scheduled drug actually be produced. There is nothing in the text of 17-A M.R.S. § 1101(4) or 17-A M.R.S. § 1103 that suggests that the Legislature intended to duplicate criminal attempt in this context, and we will not infer such an intention.

[¶20] We have previously addressed what type of evidence is required to support a conviction for unlawful trafficking in schedule W drugs via the manufacture of methamphetamine. In *State v. Woo*, we affirmed a conviction for unlawful trafficking in schedule W drugs where, like in this case, no methamphetamine was found in the defendant's possession. 2007 ME 151, ¶¶ 15, 23, 938 A.2d 13. Likewise, the defendant in *Woo* did not have all of the ingredients to manufacture methamphetamine in his possession at that time he was apprehended. *Id.* ¶ 21. There was, however, "substantial circumstantial evidence that Woo successfully made methamphetamine. " *Id.* ¶ 20. Based upon that evidence, we concluded that a rational jury could have found beyond a reasonable doubt that the defendant unlawfully trafficked in methamphetamine. *Id.* ¶ 21.

[¶21] Here, unlike in *Woo*, there is no evidence, either direct or circumstantial, from which the jury could infer that Lowden successfully created methamphetamine or that methamphetamine had been created on or brought to the premises. No methamphetamine was found, Lowden lacked some of the chemicals necessary to create it, and the State did not present evidence—direct or

circumstantial—from which a jury could have rationally inferred that Lowden successfully manufactured or possessed methamphetamine. Therefore, we must vacate his conviction for aggravated trafficking of scheduled drugs.

C.      Lesser Offense Consideration

[¶22]   With the underlying conviction vacated, we must next consider whether Lowden can be convicted of a lesser included offense of attempted trafficking in scheduled drugs. Reducing a conviction for a principal offense to a lesser included offense, after determining that the evidence did not support conviction for the principal offense, but would support a finding of attempt to commit the principal offense, is a practice that is constitutionally acceptable. *See Rutledge v. United States*, 517 U.S. 292, 306 (1996) (noting that appellate courts have "uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense"); *Morris v. Mathews*, 475 U.S. 237, 246-47 (1986) (upholding the process of reducing an erroneous judgment of conviction on a greater offense to a lesser included offense unless the defendant can demonstrate a reasonable probability that he would not have been convicted of the lesser offense absent the presence of the greater offense).

[¶23]   Modification of a judgment of conviction for a principal offense to that of a lesser offense is only available, however, when the lesser included offense

is necessarily committed when the greater offense is committed. 17-A M.R.S. § 13-A(2)(A) (2013); *State v. Gantnier*, 2012 ME 123, ¶¶ 9-10, 55 A.3d 404. Thus, it is necessary to determine whether attempted trafficking of scheduled drugs, 17-A M.R.S. §§ 152, 1103(1-A), is a lesser included offense of trafficking of scheduled drugs, 17-A M.R.S. § 1103(1-A).

[¶24] A person may be convicted of trafficking if, as the court instructed the jury here, a person engages in conduct that is intentional or knowing. 17-A M.R.S. §§ 152, 1103(1-A); *see* 17-A M.R.S. § 35(1)-(2) (2013). However, a person may be convicted of attempt, 17-A M.R.S. § 152(1), only if the person is proved to have "the intent to complete the commission of the crime." Because Lowden could have been convicted of trafficking based on the jury's finding that he engaged in knowing, but not intentional, conduct, the crime of attempted trafficking was not necessarily committed when the crime of trafficking was committed. Thus, attempted trafficking is not a lesser included offense of the crime of trafficking. *See State v. Huff*, 469 A.2d 1251, 1252-54 (Me. 1984) (discussing the attempt-intent issue generally in the context of an attempted murder case). Because attempted trafficking is not a lesser included offense of trafficking, and the evidence does not support the trafficking conviction, we must remand for the entry of a judgment of acquittal.

The entry is:

> Judgment vacated. Remand to the Superior Court for the entry of a judgment of acquittal.

_____

**On the briefs:**

Thomas J. Connolly, Esq., Portland, for appellant Aaron Lowden

Janet T. Mills, Attorney General, and Jonathan Sahrbeck, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Thomas J. Connolly, Esq., for appellant Aaron Lowden

Jonathan Sahrbeck, Asst. Atty. Gen., for appellee State of Maine

York County Superior Court docket number CR-2012-555
FOR CLERK REFERENCE ONLY