MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2014 ME 136
Docket:      Aro-13-430
Argued:      October 28, 2014
Decided:     December 9, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and
             HJELM, JJ.

## STATE OF MAINE

v.

## MICHAEL O. FOX

SILVER, J.

[¶1]   Michael O. Fox appeals from his conviction (Aroostook County, *Cuddy, J.*) of several crimes, including one count of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1) (2013).[1]  Fox argues that (1) the evidence is insufficient to support his conviction; (2) the trial court committed obvious error when it instructed the jury that it did not have to find that the manufacturing process had been completed in order to convict Fox of the trafficking offense; and (3) the State failed to prove all of the elements of aggravated trafficking because, although the parties signed a stipulation as to Fox's

---

[1]  In addition to the felony trafficking offense, Fox was convicted of three counts of violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2013).  Fox was also charged with theft (Class E), 17-A M.R.S. § 353(1)(A) (2013), but was acquitted of that charge.  Only the aggravated trafficking charge is at issue in this appeal.

prior conviction for a similar offense, the stipulation was not entered in evidence. We affirm the judgment.

## I.  BACKGROUND

[¶2]  In November 2011, an officer with the Aroostook County Sheriff's Department observed Fox and his wife engaged in a physical altercation in their parked car.  The couple was on their way home to southern Maine after visiting family in Aroostook County.  Fox was arrested on an outstanding warrant, and the officer searched the car.  In the backseat, the officer discovered a bag containing several items, including plastic tubing, a can of acetone, and drain cleaner.  These items aroused the officer's suspicions, so he contacted the Maine Drug Enforcement Agency (MDEA) and turned the items over to an MDEA special agent.

[¶3]  Recognizing the items found in Fox's car as items typically used to manufacture methamphetamine, the MDEA agent went to the Aroostook County Jail to interview Fox.  Fox explained that he had used the acetone to finish a guitar, that he used the gas-line antifreeze for his car's engine because it had a bad spark plug, and that he had used the drain cleaner to unclog a drain at his mother's house.

[¶4]  The MDEA agent obtained recordings of phone calls Fox made from the jail to his wife.  On the recording of the first phone call, Fox's wife could be heard advising Fox that the MDEA had questioned her and located the items in the

car.  In a second phone call, Fox asked his wife something to the effect of, "Did you get rid of that [stuff] that was out in the shed?"  He told her he was worried that the MDEA would go to his mother's house.  Fox also told his wife that a confidential informant had told MDEA agents that Fox had manufactured methamphetamine with a person named Larry Easler, and that he believed that another friend of his was the "rat."

[¶5]  After hearing these recordings, the MDEA agent went to Fox's mother's house and saw a shed behind the house.  Fox's mother allowed the agent to search the shed.  The agent found several more items typically used to manufacture methamphetamine, including a glass jug, sodium hydroxide (a crystal drain cleaner), a can of starter fluid, a makeshift funnel, duct tape, and a hand pump.  Several of the items were tested for the presence of scheduled drugs.  A piece of tubing with duct tape and a blue funnel both tested positive for methamphetamine residue.  In another recorded phone call, Fox's wife informed Fox that agents had searched his mother's shed, and Fox responded with an expletive.

[¶6]  Two MDEA agents went to Larry Easler's apartment and searched the apartment with Easler's consent.  They did not find any methamphetamine manufacturing supplies.  The agents asked Easler if he had any role in manufacturing methamphetamine with Fox.  Easler admitted that he had purchased

4

three boxes of pseudoephedrine for Fox with the understanding that, in return, he would receive some of the methamphetamine that was created.[2]

[¶7]  An MDEA agent met with Fox's wife a few days later at her home in Biddeford.  She admitted that while in Aroostook County she had purchased pseudoephedrine for her husband.  She also told the agent that Fox had manufactured methamphetamine in the shed behind his mother's house.

[¶8]  In March 2012, Fox was indicted on several counts, including aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1).  The indictment alleged that Fox had a prior conviction on October 25, 2001, in Aroostook County, for aggravated trafficking in scheduled drugs.  On the first day of trial, Fox's attorney and the prosecutor signed a stipulation acknowledging Fox's prior conviction, in order to avoid having the jury determine that Fox had such a conviction.  Although the stipulation is undisputed, it does not appear to have been docketed by the clerk.

[¶9]  At trial, Fox's mother testified that she had seen Fox, Fox's wife, and Easler in the shed having a drink.  She also testified that Fox had used Drano to unclog a bathtub drain in her house.  A friend of Fox's mother testified that Fox's

---

[2]  Easler testified at trial, however, that "nothing ever happened as far as [he knew]" and that he never saw or received any of the methamphetamine that Fox had planned to make.  As a result of his involvement, Easler was charged with conspiracy to traffick in scheduled drugs; he pleaded guilty and received a fifteen-month sentence.

mother allowed him to use the shed and that he kept supplies, including starter fluid, in the shed to use when working on his car. Fox's wife testified that she and Fox smoked methamphetamine in the shed, but that they purchased the drugs from Easler.

[¶10] An MDEA agent testified extensively about the "one pot" or "shake and bake" method of manufacturing methamphetamine. He explained that the process involves combining ammonium nitrate, pseudoephedrine, strips from lithium batteries, acetone, sodium hydroxide or lye, and camp fuel in a soda or Gatorade bottle, which creates a chemical reaction and allows the chemicals to "cook." This process results in "meth oil," a liquid form of methamphetamine. The agent explained that once meth oil is formed, it is typically transferred to a glass container, sometimes by using tubing. The manufacturer will typically then use muriatic acid, sulfuric acid, and salt to create hydrogen chloride gas. The gassing process results in the separation of a solid form of methamphetamine that is usable as soon as it dries. The agent testified that neither a bottle that could have been used as the "one pot" nor lithium batteries were found in the shed or in Fox's car.

[¶11] Fox moved for a judgment of acquittal at the close of the State's case and renewed the motion at the close of all of the evidence. The court denied the

6

motion as to the aggravated trafficking charge. In instructing the jury concerning the elements of trafficking, the court gave the following definitions:

> To traffick means to make, create, manufacture, to grow or cultivate, to sell, barter, trade, exchange or otherwise furnish for consideration . . . . To manufacture means to produce, prepare, propagate, compound, convert, or process, either directly or indirectly, by extraction from substances of natural origin or independently by means of chemical synthesis. The State does not have to prove that the process of manufacturing was completed, only that the defendant was producing, preparing, and processing a scheduled drug.

The court did not instruct the jury regarding the aggravating factor of Fox's prior conviction. Fox did not object to any portion of the jury instructions.

[¶12] The jury found Fox guilty of aggravated trafficking and three counts of violation of condition of release. In August 2013, Fox was sentenced to fourteen years of incarceration with all but nine years suspended and a four-year period of probation. The court also imposed concurrent six-month sentences for each of the other counts. Fox filed this appeal.

## II. DISCUSSION

A. Sufficiency of the Evidence

1. Evidence of Manufacturing Methamphetamine

[¶13] First, Fox argues that the evidence is insufficient to support his conviction for trafficking because the evidence at trial established only that he possessed some, but not all, of the ingredients and materials that can be used to

manufacture methamphetamine. He further asserts that the evidence was insufficient to link him with the residue found on the items in the shed. The State argues that there was sufficient direct and circumstantial evidence that Fox successfully manufactured methamphetamine.

[¶14] "In reviewing a challenge to the sufficiency of the evidence in a criminal matter, we consider the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Johnson*, 2014 ME 83, ¶ 10, 95 A.3d 621 (quotation marks omitted). A person is guilty of unlawful trafficking in a scheduled drug if the person "intentionally or knowingly traffics in what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug," and the drug is a schedule W drug. 17-A M.R.S. § 1103(1-A)(A) (2013). Methamphetamine is a schedule W drug. 17-A M.R.S. § 1102(1)(A) (2013). The definition of "traffick" includes "[t]o make, create, [or] manufacture." 17-A M.R.S. § 1101(17)(A) (2013). "Manufacture" means "to produce, prepare, propagate, compound, convert or process, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis." 17-A M.R.S. § 1101(4) (2013). A person is guilty of aggravated trafficking in a scheduled drug if the person violates section 1103 and, at the time

of the offense, has one or more prior convictions for any felony drug offense involving a schedule W drug. 17-A M.R.S. § 1105-A(1)(B)(1).

[¶15] We have recently decided two cases addressing the proof necessary to support a conviction for manufacturing methamphetamine. First, we concluded that circumstantial evidence of the successful completion of the manufacturing process is sufficient to support a conviction, even where not all of the necessary materials are found in the defendant's possession. *State v. Woo*, 2007 ME 151, ¶¶ 19, 21, 938 A.2d 13. In that case, although there was no direct evidence linking the defendant to methamphetamine, we concluded that the State had presented sufficient circumstantial evidence to support a conviction. *Id.* ¶ 20. We concluded that "[b]ecause there was direct and indirect evidence in the record that [the defendant] had all of the substances needed to prepare or process methamphetamine, the jury could have reasonably inferred that [the defendant] successfully manufactured methamphetamine." *Id.* ¶ 21.

[¶16] In *State v. Lowden*, we concluded that the State's evidence was insufficient to support a conviction for trafficking in methamphetamine. 2014 ME 29, ¶ 21, 87 A.3d 694. There, a law enforcement officer encountered the defendant boiling a substance in a glass container on a Coleman cooking stove. *Id.* ¶ 6. MDEA agents found various chemicals and glassware in the defendant's bedroom, along with a handbook for creating methamphetamine. *Id.* ¶ 7.

Although the chemicals found at the scene were consistent with the methods described in the handbook, the defendant did not have all of the essential ingredients, and there was no evidence that the necessary chemical syntheses had occurred. *Id.* ¶ 8. On these facts, we concluded that the evidence was insufficient to support the defendant's conviction because "unlike in *Woo*, there [was] no evidence, either direct or circumstantial, from which the jury could infer that [the defendant] successfully created methamphetamine or that methamphetamine had been created on or brought to the premises." *Id.* ¶ 21.

[¶17] Here, the proof is stronger than in both *Lowden* and *Woo*. Most importantly, actual methamphetamine residue was found on a piece of tubing and a funnel in Fox's mother's shed. Considered together with the expert testimony concerning how tubing and funnels are typically used in the manufacturing process, this evidence would allow the jury to find that the manufacturing process had been successfully completed. *See Woo*, 2007 ME 151, ¶ 20, 938 A.2d 13. Additional circumstantial evidence supports the jury's verdict: Easler purchased pseudoephedrine for Fox with the understanding that he would receive methamphetamine in return, Fox and his wife were in the shed while visiting Fox's mother, and recordings of Fox's conversations with his wife reveal that, in the context of a conversation concerning the allegations of manufacturing, Fox referred to an acquaintance as a "rat." The jury also had the opportunity to hear

Fox's response to being informed by his wife that MDEA agents had searched the shed. Although Fox's wife testified that Fox had not manufactured methamphetamine and that the pair had merely used drugs in the shed, the jury was free to reject this testimony. *See State v. Allen*, 2006 ME 20, ¶ 26, 892 A.2d 447 ("The weight to be given to the evidence and the determination of witness credibility are the exclusive province of the jury." (quotation marks omitted)).

[¶18] In short, there was evidence that Fox intended to create methamphetamine, that he had access to many of the materials necessary to make methamphetamine, and that he had, in fact, created methamphetamine, which was found on some of those items. This is more than enough evidence to support a finding that Fox successfully manufactured methamphetamine. *See Woo,* 2007 ME 151, ¶ 20, 938 A.2d 13.

2. The Stipulation as to Fox's Prior Conviction

[¶19] Fox next argues that, because the parties' stipulation to Fox's prior conviction was never offered in evidence, the evidence was insufficient to support his conviction for aggravated trafficking, which requires proof of a prior drug-related conviction. The State argues, and we agree, that the stipulation obviated the need for proof or findings relating to the prior conviction.

[¶20] In a case involving a simple assault that was charged as a felony due to two prior convictions, we held that a stipulation to a prior conviction will

"obviat[e] the need for any proof of or findings about the prior conviction[]" where it is "abundantly clear" that the defendant has agreed to stipulate to the existence of his prior conviction. *State v. Ireland*, 2005 ME 48, ¶ 4, 870 A.2d 119. Here, Fox failed to draw the court's attention to the failure of proof regarding his prior conviction at any time during trial, including when he made his two motions for judgment of acquittal. He also failed to raise the issue when the court imposed a sentence that was necessarily predicated on proof of the prior conviction. Moreover, the stipulation served to protect Fox's interests by preventing the jury from learning about his prior criminal conduct. Under these circumstances, it is abundantly clear that Fox agreed, through his attorney, that evidence of his prior conviction need not be presented to the jury. We are not persuaded that Fox's conviction must be vacated as a result of the State's administrative oversight in failing to formally introduce the stipulation on the record.

B.    Jury Instructions

[¶21]  Finally, Fox contends that the trial court committed obvious error by instructing the jury that it did not need to find that the manufacturing process had been completed in order to convict him. The State argues that there was no error because the definition of "manufacture" does not require the completion of the process and the court correctly instructed the jury that one of the elements of trafficking in scheduled drugs is the requirement that the thing trafficked in "was in

fact" a scheduled drug. Alternatively, the State asserts that any error was not plain because the jury instructions were based on the language we used in our decision in *Woo*, 2007 ME 151, 938 A.2d 13. Finally, the State contends that any error was harmless because the evidence of methamphetamine residue on the items found in Fox's mother's shed effectively forecloses any possibility that the jury's verdict was based on a conclusion that Fox was merely in the beginning stages of the manufacturing process.

[¶22] "We review jury instructions in their entirety and will disturb a judgment on the grounds that the jury instructions are in error only if the instructions fail to inform the jury correctly and fairly in all necessary respects of the governing law." *Caruso v. Jackson Laboratory*, 2014 ME 101, ¶ 12, 98 A.3d 221 (quotation marks omitted). Because Fox did not object to the jury instructions at trial, we review them only for obvious error. *State v. Preston*, 2011 ME 98, ¶ 7, 26 A.3d 850. Obvious error exists where there is "(1) error, (2) that is plain, . . . (3) that affects substantial rights[, and] (4) the error seriously affects the fairness[,] integrity, or public reputation of judicial proceedings." *State v. Pabon*, 2011 ME 100, ¶ 26, 28 A.3d 1147 (quotation marks omitted) (alterations omitted). We evaluate whether the trial court's instruction amounted to obvious error based on the current state of the law. *See State v. Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032 ("An error is plain if the error is so clear under

current law that the trial judge and prosecutor were derelict in countenancing it." (quotation marks omitted) (citations omitted) (alterations omitted)).

1.      Whether there was Error that was Plain

[¶23]   The State correctly notes our statement in *Woo* that the aggravated trafficking statute "does not require the State to prove that the [manufacturing] process has been completed before it applies." 2007 ME 151, ¶ 23, 938 A.2d 13. Although this one sentence of dicta could be read to suggest that the State does not need to prove that the manufacturing process has been completed in order to sustain a trafficking conviction, our actual holding in that case was that the circumstantial evidence supported an inference that the manufacturing process had been successfully completed. *Id.* ¶ 21 ("[T]he jury could have reasonably inferred that Woo successfully manufactured methamphetamine."); *id.* ¶ 22 ("*In addition*, the evidence on the record supports a finding that the State proved that Woo was guilty . . . because he prepared or processed methamphetamine." (emphasis added) (quotation marks omitted)).   We clarify here that *Woo* should not be read as suggesting that a person may be found guilty of manufacturing methamphetamine if the person has not actually created methamphetamine.  We reiterate, however, that direct evidence of the successful completion of the manufacturing process is not necessarily required; circumstantial evidence may be sufficient. *Id.* ¶ 20.

[¶24]   In *Lowden*, which was decided after Fox's trial, we vacated the defendant's conviction because there was no evidence that the manufacturing process had been completed.  2014 ME 29, ¶ 21, 87 A.3d 694.  We explained that "[t]he most appropriate way to harmonize the definition of manufacture with the criminal attempt statute is to require that a scheduled drug actually be produced." *Id.* ¶ 19.   Pursuant to our holding in *Lowden* and the statutory definition of "traffick," the trial court's jury instructions were in error.  Applying the law as it exists today, *see Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032, we conclude that the trial court's jury instruction constituted an error that was plain.

> 2.   Whether the Error Affected Substantial Rights or Seriously Affects the Fairness, Integrity, or Public Reputation of Judicial Proceedings

[¶25]   "An error affects the defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding."  *State v. Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066 (quotation marks omitted).   In an obvious-error analysis, a defendant who failed to object to the error at trial bears the burden of persuasion on appeal.  *Dolloff*, 2012 ME 130, ¶ 39, 58 A.3d 1032. "To determine whether . . . there is a reasonable probability that [an] instructional error affected the outcome of the proceeding, we . . . examine the evidentiary record."  *Pabon*, 2011 ME 100, ¶ 36, 28 A.3d 1147.

[¶26]  Fox has failed to demonstrate a reasonable probability that the error in the jury instructions affected the outcome of the proceeding.  The instruction concerning whether the manufacturing process must be complete could only have affected the verdict if the evidence suggested that Fox had begun the manufacturing process but had not successfully finished it.  Fox's strategy at trial, however, was to demonstrate that he had no involvement in the manufacturing process by showing that other individuals had access to the shed where the supplies and methamphetamine were found, and that the items found in his car were unrelated to the manufacturing process.  Because methamphetamine was found on the supplies in the shed, there was little doubt that someone had successfully created methamphetamine.[3]  On these facts, the primary question for the jury was the identity of the person responsible.  Because there was no evidentiary basis for the jury to conclude that Fox began, but did not complete, the manufacturing process, any error in the jury instructions did not affect Fox's substantial rights, nor did it affect the fairness or integrity of the proceedings.  Accordingly, we conclude that, although there was an error that was plain, it did not constitute obvious error. *See id.* ¶ 29.

---

[3]  Although Fox's wife testified that she and Fox smoked methamphetamine in the shed, she did not testify that they used the funnel or tubing to do so, and Fox did not argue that those items were or could be used to smoke methamphetamine.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Hunter J. Tzovarras, Esq., Bangor, for appellant Michael O. Fox

Todd R. Collins, District Attorney, and Kurt A. Kafferlin, Asst. Dist. Atty., 8th Prosecutorial District, Houlton, for appellee State of Maine

**At oral argument:**

Hunter J. Tzovarras, Esq., for appellant Michael O. Fox

Kurt A. Kafferlin, Asst. Dist. Atty., for appellee State of Maine