MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:    2019 ME 166
Docket:      Cum-19-92
Argued:      October 9, 2019
Decided:     December 17, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DONALD J. THURLOW

HJELM, J.

[¶1]  Donald J. Thurlow appeals from a judgment convicting him of operating under the influence, operating after suspension, and criminal speeding, entered in the Unified Criminal Docket (Cumberland County, *Horton, J.*) after a trial.  Among his contentions, Thurlow asserts that he did not receive a fair trial because the court provided the jury with erroneous instructions about how it could properly consider evidence of his failure to submit to a breath- or blood-alcohol test.  We agree and therefore vacate the judgment and remand for a new trial on all charges.

## I.  BACKGROUND

[¶2]  We draw the following account of this case from the procedural record and the evidence viewed in the light most favorable to the State.  *See State v. Ayotte*, 2019 ME 61, ¶ 2, 207 A.3d 614.

[¶3]  On June 22, 2018, in Gray, Thurlow was driving a motor vehicle, traveling more than twice the posted speed limit of thirty-five miles per hour. At the time, he was impaired by alcohol and his privilege to operate a motor vehicle was under suspension as a result of a prior OUI conviction.  After passing a sheriff's deputy who was driving in the opposite direction, Thurlow pulled into a driveway, exited the vehicle, and ran into some nearby woods.  The deputy turned around to investigate and came across the unoccupied vehicle. Thurlow eventually emerged from the woods and was apprehended by the deputy.

[¶4]  After Thurlow performed poorly on field sobriety tests, the deputy arrested him and told him that he would be transported to the jail to take a breath-alcohol test.  Although Thurlow told the officer at the scene that he was not going to blow into the instrument, when they arrived at the jail the officer began administering an Intoxilyzer test.  Thurlow started to provide a breath sample but stopped before the sample was complete, saying that his "breath

hurt." He then provided a second partial sample before stating that he was not going to complete the test. The deputy informed Thurlow about the consequences of failing to submit to a test. *See* 29-A M.R.S. § 2521(3) (2018). Thurlow signed a form acknowledging that he had received the warnings and documenting his decision not to submit to a test.

[¶5] The State subsequently charged Thurlow with OUI enhanced by two prior OUI convictions (Class C), 29-A M.R.S. § 2411(1-A)(C)(3) (2018); operating after suspension (Class E), 29-A M.R.S. § 2412-A(1-A)(B) (2018); and criminal speeding (Class E), 29-A M.R.S. § 2074(3) (2018). As part of the OUI charge, the State alleged that Thurlow had "failed to submit to a test at the request of a law enforcement officer." Thurlow entered not guilty pleas to all of the charges, and the case proceeded to trial in February of 2019. The trial was to a jury except for the charge of operating after suspension, on which Thurlow had elected to proceed with a jury-waived trial.

[¶6] At trial, the State presented the testimony of two law enforcement officers who had been involved in the investigation. Thurlow also testified. He admitted that at the time of the incident he was under the influence of alcohol and present in the vehicle, which he owned, but he claimed that he was a passenger. He stated that the operator was a person named "Steve," that he had

met Steve just that day, and that Steve was test-driving the car, which Thurlow was trying to sell. Thurlow also presented testimony from a person who had been working on the car and who told the jury that Thurlow and a potential buyer took the vehicle for a drive and that Thurlow was the passenger.

[¶7]  In its final instructions, the court told the jury:

[I]n this case, Mr. Thurlow is charged with the criminal offense called operating under the influence. And the State also claims that he refused to take a test of his breath-alcohol level at that time.

. . . [A] person is guilty of operating under the influence if the person operates a motor vehicle while under the influence of an alcoholic beverage or while having an excessive blood-alcohol level or content. So the State must prove each of the following things beyond a reasonable doubt before the defendant can be found guilty of this charge:

First, that on or about June 22nd, 2018, in the town of Gray, the defendant Donald Thurlow operated a motor vehicle.

. . . .

Second, at the time of the operation of a motor vehicle, the defendant was under the influence of an alcoholic beverage.

. . . .

Now, in this case there is no breath or blood-alcohol test in the evidence. The State alleges that the defendant Donald Thurlow refused to submit to an Intoxilyzer test of his breath-alcohol level at the request of a law enforcement officer. Although a driver's refusal to take a test of their breath-alcohol level is not a criminal offense in and of itself and does not, standing alone, prove operating under the influence, it is part of the evidence in this case.

> If you decide that the State has proved that the defendant refused a test of his breath-alcohol level, *you may consider his refusal of the test as evidence that he was operating under the influence of an alcoholic beverage.* It's for you, the jury, to decide the weight or effect of any evidence in the case.

(Emphasis added.) Neither party objected to any aspect of the court's jury instructions.

[¶8] The jury found Thurlow guilty of OUI[1] and also found that he had failed to submit to a test as requested by the deputy. Additionally, the jury found Thurlow guilty of criminal speeding, and the court found him guilty of operating after suspension. At a sentencing hearing held several weeks later, on the OUI charge the court imposed a prison sentence of three years with two years suspended and two years of probation, and a $1,400 fine.[2] *See* 29-A M.R.S. § 2411(5)(C)(2018). On the other charges, the court imposed concurrent terms of incarceration and the minimum mandatory $600 fine on the charge of operating after suspension, *see* 29-A M.R.S. § 2412-A(3) (2018). Thurlow filed

---

[1] Relevant to the OUI charge, the parties stipulated to the enhancement allegation that Thurlow had been convicted of OUI in December of 2008 and April of 2018. Consequently, that evidence was not presented to the jury.

[2] At the sentencing hearing, the parties and the court discussed whether a court-ordered suspension of Thurlow's right to register a motor vehicle was required as a component of the sentence. Although that penalty was mandatory, *see* 29-A M.R.S. §§ 2411(5)(C)(4), 2416 (2018), the court did not include it in the sentence.

6

a timely appeal from the resulting judgment.[3] *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2A, 2B(b)(1).

## II. DISCUSSION

[¶9]    Thurlow argues, among other things, that the court's jury instructions regarding his alleged failure to submit to a breath-alcohol test—and the evidentiary significance of such a failure—contained misstatements of law.[4]

[¶10]  Because Thurlow did not object to the jury instructions, we review for obvious error, which "exists where there is (1) error, (2) that is plain, (3) that affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Fox*, 2014 ME 136, ¶ 22, 105 A.3d 1029 (alterations omitted) (quotation marks omitted); *see* M.R.U. Crim. P. 30(b), 52(b); *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.  An instructional error affects a defendant's substantial rights if there is a "reasonable probability" that the error affected the outcome of the

---

[3]  Thurlow also filed an application for leave to appeal his sentence.  *See* M.R. App. P. 20.  The application was denied by the Sentence Review Panel.

[4]  One of Thurlow's other arguments on appeal is that—albeit without objection—the court impermissibly expressed an opinion on issues of fact when it instructed the jury that "a driver's refusal to take a test . . . is part of the evidence in this case."  *See* 14 M.R.S. § 1105 (2018) (prohibiting a trial judge from expressing an opinion on factual issues to a jury); *State v. Just*, 2007 ME 91, ¶ 15, 926 A.2d 1173.  Because we vacate the judgment on other grounds, we do not reach this contention.

proceeding. *Pabon*, 2011 ME 100, ¶¶ 34-36, 28 A.3d 1147; *see also State v. Weaver*, 2016 ME 12, ¶ 11, 130 A.3d 972 (describing obvious error as occurring if the incorrect instruction "reviewed with the charge as a whole constituted highly prejudicial error tending to produce manifest injustice" (quotation marks omitted)); *State v. Doughty*, 399 A.2d 1319, 1326 (Me. 1979) (stating that jury instructions contain obvious error when they "so taint[] the proceeding as virtually to deprive the aggrieved party of a fair trial"). We review the challenged instruction in the context of the jury charge as a whole, *e.g.*, *Weaver*, 2016 ME 12, ¶ 11, 130 A.3d 972, and will vacate a judgment based on a trial court's jury instructions "only if the instructions fail to inform the jury correctly and fairly in all necessary respects of the governing law," *Fox*, 2014 ME 136, ¶ 22, 105 A.3d 1029 (quotation marks omitted).

[¶11] We focus our analysis specifically on the court's instruction to the jury that if it found that Thurlow had failed to submit to a test, it could "consider his refusal of the test as evidence that he was *operating* under the influence of an alcoholic beverage." (Emphasis added.)

[¶12] Title 29-A M.R.S. § 2431(3) (2018) articulates a set of rules governing evidence of an accused's failure to submit to a breath- or

8

blood-alcohol test in an OUI case.[5]  The statute provides in part, "Failure of a person to submit to a chemical test is admissible in evidence on the issue of whether that person *was under the influence of intoxicants*."  29-A M.R.S. § 2431(3) (emphasis added).  Therefore, by operation of statute, a jury may consider admissible evidence of a failure to submit to a test in determining whether the State has proven the impairment element of OUI.[6]

[¶13]  The statute, however, does *not* authorize consideration of this type of evidence on the issue of operation.  This limitation in reach is understandable given that, although an accused's failure to submit to a test may be seen to bear on the question of whether the person was *impaired* by an intoxicant, the Legislature has not signified a connection between a person's failure to submit

---

[5]  Although the court and the parties referred to a "refusal" to submit to a breath-alcohol test, the statute that formed the basis for Thurlow's OUI charge describes the issue in terms of a "failure" to submit.  *See* 29-A M.R.S. § 2411(1-A)(C) (2018).  The latter descriptor is also more faithful to the way the Legislature framed the statutory scheme more broadly.  *See, e.g.*, 29-A M.R.S. §§ 2411(5)(A)-(D), 2431(3) (2018).

[6]  An allegation that a defendant failed to submit to a test is also relevant in an OUI case for a separate reason: a person who commits the offense of OUI becomes subject to mandatory enhanced penalties if that person is also found to have "failed to submit to a test at the request of a law enforcement officer."  29-A M.R.S. § 2411(5)(A)-(D).  The enhanced penalties are "not mandatory," however, if a law enforcement officer failed to provide the required warnings.  29-A M.R.S. § 2411(5)(E) (2018); *see* 29-A M.R.S. § 2521(3) (2018).  Therefore, in order for a sentencing court to identify the minimum penalty after a jury trial, the jury must determine whether the State has proved *two* things beyond a reasonable doubt: first, that the defendant failed to submit to a test at the request of a law enforcement officer; and second, that the officer had provided the required warnings.  *See Alleyne v. United States*, 570 U.S. 99, 108 (2013) ("Facts that increase the mandatory minimum sentence . . . must be submitted to the jury and found beyond a reasonable doubt."); *State v. Hastey*, 2018 ME 147, ¶ 24 & n.11, 196 A.3d 432.  If a verdict form is used, as it was here, it should ask the jury to express its decisions on both questions of fact.

to a chemical test and the issue of whether that person had been *operating* a motor vehicle. This statutory disconnect is demonstrated by the absence of any legal authority cited by the State to support the notion that a jury should be permitted to consider evidence of a failure to submit to a test on the element of operation.[7] Additionally, at oral argument, the State explicitly acknowledged that this aspect of the court's instruction was erroneous—although, in its view, not obviously so—and that the error was not harmless.

[¶14] Accordingly, the jury instructions in this case were materially flawed because the instructions provided that if the jury found that Thurlow had failed to submit to a test, it could "consider his refusal of the test as evidence that he was *operating* under the influence of an alcoholic beverage." (Emphasis added.) This part of the court's instructions misstated the law and remained uncorrected by any other component of the jury charge. *See State v. Villacci*, 2018 ME 80, ¶¶ 17-18, 187 A.3d 576. Therefore, the instructions constituted

---

[7] In *State v. Pineau*, we stated that a suspect's "failure to comply with the statutory obligation [to submit to a blood-alcohol test] is admissible in evidence on the issue of whether he was operating while under the influence." 491 A.2d 1165, 1167 (Me. 1985). In support of that proposition, we cited the now-repealed 29 M.R.S.A. § 1312(8) (Supp. 1983-1984), which read, in relevant part, "[t]he failure of a person to comply with the duty . . . to submit to a blood-alcohol test shall be admissible in evidence *on the issue of whether that person was under the influence of intoxicating liquor*." (Emphasis added.) *Pineau*, 491 A.2d at 1167; *see* P.L. 1993, ch. 683, § A-1 (effective Jan. 1, 1995). In *Pineau*, the allegation of operation was not contested, and it appears that the trial court's actual instruction to the jury connected the failure to submit only to the impairment element. *See Pineau*, 491 A.2d at 1166-67. To the extent that our dictum in *Pineau* can be read to allow evidence of a failure to submit to bear on the issue of operation, we now clarify that it does not.

plain error because—even when read as a whole—they "failed to inform the jury correctly . . . in all necessary respects of the governing law."[8]  *Id.* ¶ 9 (alteration omitted) (quotation marks omitted).

[¶15]  Further, the error rises to the level of obvious error because there is a reasonable probability that it affected the outcome of the trial and Thurlow's substantial rights.  *See Pabon*, 2011 ME 100, ¶ 36, 28 A.3d 1147 (explaining that we "examine the evidentiary record" to determine whether an error affected a defendant's substantial rights).  As the parties presented their cases to the jury, the *only* contested issue was whether Thurlow was the operator of the vehicle; Thurlow's entire defense was based on his claim that he was not the operator.  As a result, the instructional flaw directly related to the only contested element of the OUI charge.  The error, although unpreserved, therefore meets the high standard of prejudice necessary to qualify as obvious error.  *See Villacci*, 2018 ME 80, ¶ 20, 187 A.3d 576 (concluding that an instructional error rose to the level of obvious error "particularly given that

---

[8]  In addition to the error discussed in the text, the instructions also deviated from 29-A M.R.S. § 2431(3) in another respect.  The third paragraph of that statute authorizes the court to instruct the jury that no test result is available when evidence of a defendant's failure to submit to a test has not been admitted.  *See* 29-A M.R.S. § 2431(3).  Here, the trial court instructed the jury that there was no test result in evidence, but the circumstance that would statutorily permit such an instruction did not exist here because the jury *was* presented with evidence of Thurlow's failure to submit.  We need not attempt to gauge the impact of this instruction, however, given that we vacate the judgment for a different reason.

[the] defense was focused in large part on the application of the statutory justifications" that were the subject of the erroneous instructions); *State v. Baker*, 2015 ME 39, ¶ 22, 114 A.3d 214 (concluding that an instructional error constituted obvious error where the instruction at issue related to an issue that was "central to the case").

[¶16]  Contrary to the State's argument, our decision in *Fox* does not control the result here.  In that case, which involved an allegation of drug manufacturing, we concluded that, even though the trial court's jury instruction on the statutory definition of "manufacture" was plainly erroneous, it was not reasonably probable that the error affected the outcome of the proceeding.  *Fox*, 2014 ME 136, ¶¶ 11, 23-26, 105 A.3d 1029.  We explained that the erroneous instruction—that the jury did not need to find that the process of manufacturing was completed—could have affected the outcome only if the jury had been presented with evidence that a manufacturing process was started but not completed.  *Id.* ¶ 26.  But there was no such evidentiary conflict—the dispositive factual issue was whether the defendant was involved in the manufacturing process at all.  *Id.*

[¶17]  In contrast, the erroneous instruction here related to the operation element of OUI, which was not only *a* contested issue at trial, but was *the only*

contested factual issue. During his testimony, Thurlow admitted that he was intoxicated, but he testified that he was not the driver of the vehicle, and he presented other evidence supporting that account. Therefore, unlike in *Fox*, the jury in this case was presented with evidence that placed in direct and dispositive conflict the element addressed in the erroneous instruction. On this record, there is a reasonable probability that, when the jury found that Thurlow was the operator of the vehicle, it followed the court's instructions and gave improper effect to the evidence that he failed to submit to a test. *See Baker*, 2015 ME 39, ¶ 18, 114 A.3d 214 ("[W]e presume that jurors follow instructions they are given."). Given these circumstances, we conclude that the instructional error "seriously affect[ed] the fairness and integrity or public reputation of" the proceedings, *Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147, and that Thurlow is entitled to a new trial. Because operation is a common element to all three charges against Thurlow, *see* 29-A M.R.S. §§ 2074(3), 2411(1-A)(C)(3), 2412-A(1-A)(B), and the court's instructions on how the jury could find that he was the operator were erroneous, the new trial will need to encompass all three counts.

## III. CONCLUSION

[¶18]   Because the court's instructions contained obvious error by informing the jury that it could consider evidence of a failure to submit to a test on the issue of operation, we vacate the judgment and remand for a new trial on all counts.

The entry is:

Judgment vacated.  Remanded for a new trial.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Donald J. Thurlow

Jonthan Sahrbeck, District Attorney, William J. Barry, Asst. Dist. Atty., and Jordan Tomah Ramharter, Stud. Atty. (orally), Prosecutorial District 2, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2018-3409
For Clerk Reference Only