MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 59
Docket:       Yor-15-37
Argued:       December 8, 2015
Decided:      April 21, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

DALE M. PINKHAM SR.

MEAD, J.

[¶1] Dale M. Pinkham Sr. appeals from a judgment of conviction entered in the Unified Criminal Docket (York County, *Fritzsche, J.*) following his convictions after conditional guilty pleas, and a bench trial on aggravating factors only, on three counts of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(H) (Count I), (1)(B)(1) (Count II), (1)(C-1)(1) (Count III) (2015);[1] and one count of possession of a firearm by a prohibited person (Class C) (Count VII), 15 M.R.S. § 393(1)(A-1)(1) (2015).

[¶2] Pinkham contends that both 17-A M.R.S. § 1101(17)(E) (2015), which provides that one of the ways in which a person may "traffick" in heroin is "[t]o

---

[1] Counts I, II, and III alleged identical charges of trafficking in scheduled drugs, but each put forward separate and distinct aggravating factors to enhance the charge from a Class B offense to a Class A offense: Count I alleged trafficking six grams or more of heroin; Count II alleged that Pinkham had a 1986 felony conviction for unlawful trafficking in scheduled drugs; and Count III alleged that Pinkham possessed a firearm in furtherance of the offense.

2

possess 2 grams or more of heroin," and 17-A M.R.S. § 1105-A(1)(H),[2] which elevates trafficking in heroin from a Class B to a Class A offense, require proof of specific weights of actual heroin, not mixtures or compounds containing some amount of heroin. We agree. Because the State did not prove the weight of the actual heroin involved, we vacate the judgments of conviction. Pursuant to the terms of Pinkham's conditional guilty pleas, we remand to allow Pinkham to withdraw his guilty pleas and for further proceedings. *See* M.R.U. Crim. P. 11(a)(2).

## I. BACKGROUND

[¶3] From the evidence admitted at trial, the court could find the following facts. *See State v. Stanley*, 2015 ME 56, ¶ 2, 115 A.3d 1236. On December 6, 2013, Maine Drug Enforcement Agency agents executed a search warrant at Pinkham's residence. They found 20.75 grams of a powder testing positive for heroin, packaged in two "fingers" and five smaller "tickets," as well as several firearms, including a loaded .44 magnum revolver, and $3800 in cash.

---

[2] Title 17-A M.R.S. § 1105-A(1)(H) (2015) provides:

    **1.** A person is guilty of aggravated trafficking in a scheduled drug if the person violates section 1103 [unlawful trafficking in scheduled drugs] and:

    . . . .

    **H.** At the time of the offense, the person trafficks in heroin in a quantity of 6 grams or more or 270 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin. Violation of this paragraph is a Class A crime.

When agents interviewed Pinkham that evening, he admitted that the heroin was his and that he used some and regularly sold it as well. He said that the guns belonged to his son.

[¶4] The York County Grand Jury indicted Pinkham on seven criminal counts and four counts of criminal forfeiture.[3] Three of the criminal counts were later dismissed by the State. The criminal charges remaining for trial were the three counts of aggravated trafficking in scheduled drugs (Counts I-III) and the charge of possession of a firearm by a prohibited person (Count VII), as recited *supra*.

A. The Conditional Guilty Pleas

[¶5] Pinkham entered conditional guilty pleas to Counts I, II, and III absent their aggravating factors, resulting in pleas to unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2015).[4] Pinkham's conditional guilty pleas were specifically limited to that part of the statutory definition of "traffick" that includes "possess[ion] [of] 2 grams or more of heroin," 17-A M.R.S. § 1101(17)(E).

---

[3] Following trial, the court ordered the forfeiture of $10,010 in currency and the .44 magnum revolver. *See* 15 M.R.S. § 5826 (2015). Pinkham does not challenge the forfeiture on appeal.

[4] Title 17-A M.R.S. § 1103(1-A)(A) (2015) provides that, absent an express statutory provision to the contrary, "a person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly traffics in what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug, and the drug is . . . [a] schedule W drug. Violation of this paragraph is a Class B crime." Heroin is a schedule W drug. 17-A M.R.S. § 1102(1)(I) (2015).

4

[¶6]  When the court addressed Pinkham concerning his intention to enter conditional guilty pleas, it said:

> COURT:  So what that leaves us with, Mr. Pinkham, is Counts I, II and III, in their non-aggravated portion [which] are Class B offenses for trafficking in a scheduled drug.  The claim there is that about December 6, 2013 in Buxton, you intentionally or knowingly trafficked in what you knew or believed to be a scheduled drug, which was, in fact, heroin.  So they're claiming that the trafficking is not a question of your being caught selling it, but rather that you're possessing two or more grams of a substance whose total weight, including the inert substance or the cut, was more than two grams.  So do you know that they have to prove that you intentionally or knowingly possessed a certain substance, you knew or believed it to be heroin.  The total weight was excessive (sic) two grams.  At least some if it was, in fact, heroin. . . . So do you know that that's the Class B part of this?
>
> PINKHAM:  Yes, sir.

[¶7]  The State offered no objection to the court's explanation constraining the scope of the pleas to the trafficking charges in Counts I, II, and III to the weight of heroin in Pinkham's possession.  After the court heard the State's proffer of the evidence that it expected to present had there been a trial, which included evidence of Pinkham's possession of heroin and his confession to selling it, the court accepted the pleas.  Pinkham's attorney then noted, without objection or qualification by the State, that "with respect to the Rule 11[5] . . . the issue we were

---

[5]  The rule governs, *inter alia*, the acceptance of conditional guilty pleas.  M.R. Crim. P. 11(a)(2) (Tower 2014); *see* M.R.U. Crim. P. 11(a)(2) (effective July 1, 2015, in York County).

obviously concerned about is the prong of possession of two grams or more of heroin as equating to trafficking," to which the court responded, "That's right."

[¶8]  Although the State could have sought to establish as an alternative basis for conviction that Pinkham did "sell, barter, trade, exchange or otherwise furnish [heroin] for consideration," and was therefore guilty of trafficking the drug, 17-A M.R.S. § 1101(17)(C) (2015), it is clear that Pinkham's conditional pleas to Counts I, II and III were tendered only in response to the allegation that he "possess[ed] 2 grams or more of heroin."  17-A M.R.S. § 1101(17)(E).

[¶9]  The pleas preserved for appeal the argument raised in Pinkham's third motion in limine, which the court rejected, that the State was required to prove that he possessed two grams or more of actual heroin.

B.    Bench Trial on the Aggravating Factors

[¶10]  At a bench trial convened to address the viability of the aggravating factors alleged in Counts I, II, and III, which would, if proved, elevate the Class B offenses to which Pinkham pleaded guilty to Class A offenses,[6] the State presented the testimony of officers who conducted the search of the Pinkham residence, and

---

[6] *See* 17-A M.R.S. §§ 1105-A(1)(H), (1)(B)(1), (1)(C-1)(1) (2015).

others who interviewed Pinkham. The officers confirmed that Pinkham confessed to possessing the heroin found in the home and to selling it on a daily basis.[7]

[¶11] The State also offered the testimony of the chemist for the Maine Health and Environmental Testing Laboratory who tested the powder recovered from Pinkham. He testified that prior to testing he aggregated 19.52 grams of powder from the two "fingers," and separately aggregated 1.23 grams of powder from the five "tickets." He then tested the two mixtures; each tested positive for heroin and at least one also tested positive for a cutting agent, caffeine. The chemist could not say whether each of the original "fingers" or "tickets" contained heroin before they were mixed together, nor did he determine the amount of actual heroin in the mixtures, although the laboratory could have done so if the submitting agency had requested such a test. In sum, the chemist told the court that there was some detectable amount of heroin in the mixtures that met the laboratory's unspecified threshold reporting requirement, "but I have no idea how much heroin was in fact there."

[¶12] At the conclusion of the trial the court found that the aggravating factors alleged in Counts I, II, and III had been proved beyond a reasonable doubt, and thus found Pinkham guilty of the three counts of Class A aggravated

---

[7] Pinkham provided considerable detail regarding his heroin selling operation including pricing, profits, amounts, and his supplier's location.

trafficking charged in the indictment. The court also found Pinkham guilty on Count VII; Pinkham does not challenge that verdict on appeal. At a sentencing hearing, the court entered judgment and sentenced Pinkham on Counts I, II and III to concurrent terms of fourteen years' imprisonment, with all but seven years suspended, and four years of probation, along with a $400 fine on each count and $120 in restitution; on Count VII the count imposed three years' imprisonment to be served concurrently. Pinkham appealed.

## II. DISCUSSION

[¶13] Concerning both the weight required to establish Class B trafficking (two grams), 17-A M.R.S. § 1101(17)(E), and the weight required to prove the aggravating factor in Count I (six grams), 17-A M.R.S. § 1105-A(1)(H), the issue is whether, as the State contends, the term "heroin" as used in 17-A M.R.S. § 1101(17)(E) and § 1105-A(1)(H) means a "compound, mixture or preparation containing" heroin, *see* 17-A M.R.S. § 1102(1)(I) (2015),[8] or whether it means actual heroin. If it is the former, there was sufficient evidence that Pinkham possessed much more than the weight necessary to establish both the Class B trafficking offenses to which he pleaded guilty and the aggravated offense charged

---

[8] The statute has been amended, but not in any way that affects this appeal. P.L. 2015, ch. 330, § 1 (emergency, effective July 12, 2015).

in Count I. If it is the latter, there was insufficient evidence that the substance recovered from Pinkham contained actual heroin of any given quantity.

[¶14] It is well established that "[w]hen interpreting a statute de novo, we first examine the plain meaning of the statutory language. The fundamental rule in the interpretation of any statute is that the intent of the legislature, as divined from the statutory language itself, controls." *State v. Solomon*, 2015 ME 96, ¶ 9, 120 A.3d 661 (quotation marks omitted). More specifically, "[w]hen interpreting a criminal statute, we are guided by two interrelated rules of statutory construction: the rule of lenity, and the rule of strict construction. Pursuant to each of these rules, any ambiguity left unresolved by a strict construction of the statute must be resolved in the defendant's favor." *State v. Lowden*, 2014 ME 29, ¶ 15, 87 A.3d 694 (citations omitted).

[¶15] The crime of trafficking heroin to which Pinkham pleaded guilty in Count I may be committed in one of two ways, either by (1) "possess[ing] 2 grams or more of heroin," or by (2) "possess[ing] . . . 90 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin." 17-A M.R.S. §§ 1101(17)(E), 1103(1-A)(A). The difference in the two alternatives is significant. Whereas the second alternative criminalizes trafficking in a sufficient number of packages "*containing* heroin," *id.* § 1101(17)(E) (emphasis added), the first criminalizes trafficking two grams or more of "heroin," not two grams or

more of a compound *containing* heroin. The fact that the Legislature drew that distinction between two alternatives in the same sentence suggests that it was purposeful. It would have been simple enough to define the crime as prohibiting trafficking in two grams or more of any mixture containing heroin, had that been the Legislature's intent.

[¶16] Prior to 2007 that is what the Legislature did. As late as 2006, schedule W included "all narcotic drugs, including, but not limited to, the following narcotic drugs or their salts, isomers or salts of isomers: heroin . . . . *As used in this chapter, 'heroin' means any compound, mixture or preparation containing heroin.*" 17-A M.R.S. § 1102(1)(I) (2006) (emphasis added). In 2007, that provision, including the final sentence that would have conclusively resolved the issue in this case, was repealed. P.L. 2007, ch. 55, § 1 (effective Sept. 20, 2007).

[¶17] The provision now states that schedule W includes "any compound, mixture or preparation containing narcotic drugs, including, but not limited to, the following narcotic drugs or their salts, isomers or salts of isomers: heroin." *Id.* (codified at 17-A M.R.S. § 1102(1)(I)). The State argues that the legislation simply moved the "compound, mixture or preparation containing" language to the top of the paragraph and changed nothing insofar as heroin is concerned. That argument ignores the critical "[a]s used in this chapter" clause, however, which

was repealed and not reenacted. *See* 17-A M.R.S. § 1102(1)(I) (2006). A plain language reading of the current section 1102(1)(I) classifies a "compound, mixture or preparation containing . . . heroin" as a schedule W drug, but it does not, as it did formerly, provide that that is the meaning of the word "heroin" throughout title 17-A, chapter 45.

[¶18] We do not regard the omission of "[a]s used in this chapter" as meaningless. Rather, we conclude that section 1102(1)(I) continues to categorize a mixture containing heroin as a schedule W drug, but when section 1101(17)(E) sets out "possess[ing] 2 grams or more" as an element of the crime to which Pinkham pleaded guilty, it means, as it plainly says, two grams or more of heroin, and not two grams or more of a compound or mixture containing some heroin.

[¶19] That conclusion finds further support in other parts of the chapter of the criminal code concerning drugs.[9] *See State v. Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893 ("[W]e construe the statute in accordance with its plain meaning in the context of the whole statutory scheme." (quotation marks omitted)). Since the repeal of the former section 1102(1)(I), *see* P.L. 2007, ch. 55, § 1, "heroin" is not specifically defined. In contrast, the Legislature specifically defines "cocaine" to include "[a] mixture or preparation that contains any quantity of . . . [c]ocaine." 17-A M.R.S. § 1102(1)(F)(2)(a) (2015).

---

[9] *See* Title 17-A, chapter 45.

[¶20] Furthermore, the Legislature recently added the drug fentanyl to the definition of "traffick" in a way that demonstrates that it continues to differentiate between a drug and mixtures that contain the drug. Identically to the treatment of heroin in section 1101(17)(E), "traffick" is now defined to include the possession of "2 grams or more of fentanyl powder or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing fentanyl powder." P.L. 2015, ch. 346, § 1 (effective Oct. 15, 2015) (codified at 17-A M.R.S. § 1101(17)(F) (2015)). Dissimilar to the post-2007 treatment of heroin, however, but similar to the current treatment of cocaine, "Fentanyl powder" is newly defined to mean "any compound, mixture or preparation, in granular or powder form, containing fentanyl." P.L. 2015, ch. 346, § 3 (effective Oct. 15, 2015) (codified at 17-A M.R.S. § 1101(24) (2015)).

[¶21] In short, when the Legislature uses the name of a drug and intends for the term to include mixtures containing that drug, it knows how to accomplish that result, and does so, most recently within the past year. The fact that it once defined heroin in that way, and then repealed that definition, has meaning. Logically, that meaning is that the Legislature intended to continue including mixtures containing heroin for crimes involving schedule W drugs generally,[10] but when a specific

---

[10]    *See, e.g.*, 17-A M.R.S. § 1107-A(1)(C) (2015) (making it a crime to possess "[a] schedule W drug").

12

quantity of heroin is an element of the crime, as in this case, that quantity refers to the specified amount of actual heroin.

[¶22] If, as the State contends, requiring proof of a specific quantity of actual heroin runs counter to common street practice because traffickers sell, and users buy, the "cut" weight of the drug, that is an argument that must be made to the Legislature. It is our task to strictly construe criminal statutes as enacted by that body, in the context of the relevant statutory scheme. *See Lowden*, 2014 ME 29, ¶ 15, 87 A.3d 694; *Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893 (stating that "criminal statutes must be construed strictly with ambiguities resolved in favor of the accused" (quotation marks omitted)).

### III.  CONCLUSION

[¶23] Pinkham has prevailed on the issue preserved by his conditional guilty pleas. Because he expressly pleaded guilty to the charge of trafficking based on possession of two grams or more of heroin, and not to any alternative manner of proof provided in 17-A M.R.S. § 1101(17), we vacate the judgments of conviction on Counts I, II, and III and remand to the Superior Court, where Pinkham must be allowed to withdraw his guilty pleas if he wishes.[11]

---

[11] In vacating the underlying convictions, we express no opinion on the sufficiency of the evidence supporting the court's finding that the State proved the aggravating factors alleged in Counts II and III. It necessarily follows from our decision, however, that the aggravating factor alleged in Count I— trafficking in six grams or more of heroin—was not proved beyond a reasonable doubt, because the State did not prove that any quantifiable amount of actual heroin was involved, be it two grams or six.

[¶24] Because we are vacating all three trafficking convictions and allowing Pinkham to withdraw his guilty pleas to those counts, we do not reach his alternative argument that the trafficking convictions must be consolidated in order to avoid a double jeopardy violation.

The entry is:

> Judgment on Counts I, II, and III vacated. Remanded to allow Pinkham to withdraw his guilty pleas to those counts, and for further proceedings. Judgment on Counts VII, VIII, IX, and X affirmed.

---

**On the briefs:**

Tyler J. Smith, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant Dale M. Pinkham Sr.

Janet T. Mills, Attorney General, and Jamie R. Guerrette, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Tyler J. Smith, Esq., for appellant Dale M. Pinkham Sr.

Raphaelle Silver, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

York County Superior Court docket number CR-2013-2963