MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 202
Docket:      Aro-16-188
Argued:      February 8, 2017
Decided:     October 5, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ANDREW J. LEGASSIE

HUMPHREY, J.

[¶1]  In this appeal, we address the intersection of the digital world of social media and our criminal statutes and rules of evidence.

[¶2]  The victims of the charges at issue here are five teenage girls, designated in the trial court's order as Victims A, B, C, D, and E.[1]  At the time of the alleged offenses, the victims ranged in age from fourteen to seventeen years old.  Each victim received from the defendant explicit digital images, which were admitted in evidence as State's Exhibits 2, 5, 6, and 7, and digital messages.  The trial court found that the defendant confessed to creating those digital images and sending them by social media to many young girls, including the

---

[1]  The trial court order indicates that the defendant was originally charged with committing offenses against eight teenage girls.  The trial court entered convictions regarding only five victims, and those convictions are at issue in this appeal.

victims. There is no evidence of any in-person contact that formed the basis of the alleged crimes.

[¶3] We must decide if the crime of indecent conduct (Class E), 17-A M.R.S. § 854(1)(B) (2016), can be committed solely through the electronic transmission of images of one's genitals. We must also decide if M.R. Evid. 1002, requiring introduction of original writings, recordings or photographs, when available, requires the exclusion of the victims' testimony about digital messages that they received from the defendant.

[¶4] Andrew J. Legassie appeals from a judgment of conviction of three counts of attempted sexual exploitation of a minor (Class C), 17-A M.R.S. § 152(1)(C) (2016); 17-A M.R.S. § 282(1)(A) (2014), one count of sexual exploitation of a minor (Class B), 17-A M.R.S. § 282(1)(A),[2] one count of attempted sexual abuse of a minor (Class E), 17-A M.R.S. § 152(1)(E) (2016); 17-A M.R.S. § 254(1)(A) (2016), and five counts of indecent conduct (Class E), 17-A M.R.S. § 854(1)(B), following a bench trial in the Superior Court

---

[2] Title 17-A M.R.S. § 282(1)(A) (2014) has since been amended to, among other things, lower the age at which a target of the exploitation ceases to be a "minor" for purposes of the statute from eighteen, *see* 17-A M.R.S. § 281(2) (2016); 17-A M.R.S. § 282(1)(A) (2014), to sixteen. *See* P.L. 2015, ch. 394, § 1 (effective July 29, 2016) (codified at 17-A M.R.S. § 282(1)(A) (2016)). The criminal conduct occurred before the effective date of the amendment, and thus the prior version, 17-A M.R.S. § 282(1)(A) (2014), which imported the definition of "minor" from 17-A M.R.S. § 281(2) as a person under eighteen, applied.

(Aroostook County, *Hunter, J.*).  For the reasons set forth below, we affirm in part and vacate in part and remand for further proceedings.

## I.  BACKGROUND

[¶5]  In December 2013, Legassie added Victim A as a "friend" on the social media platform Facebook and began sending her messages through Facebook Messenger.[3]  At that time, Legassie was twenty-one years old and Victim A was fifteen.  Legassie purported to know her from working as a referee for her high school team's basketball games.  In the beginning, the messages concerned basketball, but Legassie gradually steered the conversation toward sex.  He began by complimenting Victim A on her appearance, moved to asking whether she had ever had sex, and then progressed to implying and eventually stating explicitly that they should have sex.  He stated in several messages that they should meet.  Legassie asked Victim A for pictures of herself, asking her to put on a jersey "and have nothing else one [*sic*] and send me a pic" and "let me see them legss [*sic*] and behind."  Legassie later sent Victim A a picture of himself in his bedroom exposing his genitals.  A computer printout of the

---

[3]  Facebook Messenger is the messaging application associated with the Facebook social media platform.  The format of the messages is analogous to a text message.

4

Facebook messages exchanged between Legassie and Victim A was produced and admitted in evidence.[4]

[¶6] Legassie also added fifteen-year-old Victim B as a Facebook friend and sent her messages. Legassie's messages advanced to sexual topics; Legassie asked Victim B for "naked pictures" of herself and told her he wanted to have sex with her. Legassie sent her the same picture of himself exposing his genitals. After Victim B received the nude picture of Legassie, she removed him as a friend on Facebook and deleted the messages that they had exchanged.

[¶7] Legassie continued a similar pattern of behavior on Facebook with other teenage girls during the same period. Legassie added seventeen-year-old Victim C as a friend on Facebook and sent her four nude photos of himself through Facebook Messenger. He added fourteen-year-old Victim D as a friend, sent her messages asking for pictures and eventually for sex, and sent her the same nude photos. Legassie also added Victim E as a friend, sent her messages, and asked her for nude photos, and she sent him two photos: one of her breasts and one of her genitals. Victim E was sixteen at the time. After Victim E sent photos of herself, Legassie sent her three of the nude photos of himself, including the photo of him exposing his genitals in his bedroom.

---

[4] Other victims testified about the messages from memory. The State did not obtain originals or copies of the messages Legassie exchanged with the other victims.

[¶8]  On July 11, 2014, the State charged Legassie by indictment with seven counts of attempted sexual exploitation of a minor (Counts 1-7), one count of attempted sexual abuse of a minor (Count 8), twelve counts of indecent conduct (Counts 9-18, 26, 28), seven counts of violating a condition of release (Counts 19-25), and two counts of sexual exploitation of a minor (Counts 27 and 29).

[¶9]  The court held a bench trial on October 13, 2015.  During the trial, Legassie objected to testimony by each victim about the content of the Facebook messages on the basis that the evidence contravened M.R. Evid. 1002, the "Requirement of the Original" rule, also referred to as the "best evidence" rule.  In a memorandum submitted after trial, Legassie also argued that the evidence of photographs was insufficient to support his convictions for indecent conduct because the statute requires that the exposure of genitals occur in the physical presence of another.

[¶10]  In a written decision dated February 25, 2016, the court determined that the best evidence rule did not apply because the specific content of the messages was not material to the charges; rather, the court found that the State's proof relied on "the general import" of what Legassie wanted from the victims and what he sent to them.  The court further found that

Legassie exposed his genitals while in a private place, took a picture, and sent that picture to the victims with the intent that they see his genitals. It concluded that he was therefore guilty of the indecent conduct charges. The court noted that the indecent conduct statute's plain language does not "restrict or limit the manner in which [indecent conduct] can be committed." The court thus found Legassie guilty of three counts of attempted sexual exploitation of a minor, one count of sexual exploitation of a minor, one count of attempted sexual abuse of a minor, and five counts of indecent conduct. The court found Legassie not guilty of the remaining counts charged in the indictment.

[¶11]  On March 24, 2016, the court sentenced Legassie to the following:

- four years, all but nine months and one day suspended with three years of probation, on Count 27;

- thirty days on Count 26, ninety days on Count 6, and thirty days on Count 12, to be served concurrently with each other and consecutive to the other sentences;

- sixty days on Count 1, thirty days on Count 8, and thirty days on Count 9, to be served concurrently with each other and consecutively to Counts 26, 6, and 12;

- sixty days on Count 2 and thirty days on Count 10, concurrent with each other and consecutive to the other sentences; and

- thirty days on Count 11, to be served consecutively with the other sentences.

Following the entry of the judgment, Legassie timely appealed. *See* 15 M.R.S. § 2115 (2016); M.R. App. P. 2.

## II. DISCUSSION

### A. Indecent Conduct

[¶12] Legassie argues that the court erred in interpreting the indecent conduct statute, 17-A M.R.S. § 854. The statutory provision pursuant to which Legassie was convicted provides that "[a] person is guilty of indecent conduct if . . . [i]n a private place, the actor exposes the actor's genitals with the intent that the actor be seen from a public place or from another private place." 17-A M.R.S. § 854(1)(B).

[¶13] The interpretation of 17-A M.R.S. § 854 is a question of law that we review de novo. *State v. Pinkham*, 2016 ME 59, ¶ 14, 137 A.3d 203. We first look to the statutory language to discern the Legislature's intent. *Id.* "We look to legislative history and other extraneous aids in interpretation of a statute only when we have determined that the statute is ambiguous." *Carrier v. Sec'y of State*, 2012 ME 142, ¶ 12, 60 A.3d 1241 (quotation marks omitted). "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Id.* (quotation marks omitted). "[W]e must construe a statute to preserve its constitutionality, or to avoid an unconstitutional application of the statute, if at

all possible." *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 19, 41 A.3d 551. In the context of criminal statutes, our interpretation is also "guided by two interrelated rules of statutory construction: the rule of lenity, and the rule of strict construction . . . . Pursuant to each of these rules, any ambiguity left unresolved by a strict construction of the statute must be resolved in the defendant's favor." *State v. Lowden*, 2014 ME 29, ¶ 15, 87 A.3d 694 (citations omitted) (quotation marks omitted).

[¶14]  Title 17-A M.R.S. § 854 provides in relevant part:

**1.**  A person is guilty of indecent conduct if:

> **A.** In a public place:
>
>> **(1)** The actor engages in a sexual act, as defined in section 251. Violation of this subparagraph is a Class E crime;
>>
>> **(2)** The actor knowingly exposes the actor's genitals under circumstances that in fact are likely to cause affront or alarm. Violation of this subparagraph is a Class E crime;
>
> . . . .
>
> **B.** In a private place, the actor exposes the actor's genitals with the intent that the actor be seen from a public place or from another private place. Violation of this paragraph is a Class E crime;
>
> **C.** In a private place, the actor exposes the actor's genitals with the intent that the actor be seen by another person in that private place under circumstances that the actor knows

are likely to cause affront or alarm. Violation of this paragraph is a Class E crime . . . .

[¶15]  Legassie argues that to prove that his conduct met the statutory definition of indecent conduct, the State must prove that he exposed himself in the physical presence of the victim.  Legassie therefore contends that proof that he merely transmitted a digital photograph of himself to the victims in a Facebook message is legally insufficient to support the convictions.

[¶16]  Although "expose[]" and "see[]" could, construed very broadly, apply to Legassie's conduct, a narrower construction of those same terms could be interpreted to fall outside the scope of the statute.  The terms are undefined. The Legislature neither expressly extended the statute to cover an exposure depicted in a photograph and later seen by the victim, nor specifically restricted its scope to an in-person exposure.  Because different reasonable interpretations of the statute both do and do not cover Legassie's conduct, we conclude that the statute is ambiguous and thus look to legislative history and other extraneous aids to discern the Legislature's intent.  *See Carrier*, 2012 ME 142, ¶ 12, 60 A.3d 1241.  Because we must construe section 854(1)(B) in the context of the entire statutory scheme, *see Carr v. Bd. of Trs.*, 643 A.2d 372, 375 (Me. 1994), and legislative intent relevant to the meaning of "expose[]" and "see[]" may be revealed by reference to the amendments to other subsections

that contain the same terms, we consider the legislative history of section 854 as a whole.

[¶17] Indecency statutes can be traced to the common law criminal offense of "public indecency." *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 568 (1991) ("Public indecency statutes such as the one before us reflect moral disapproval of people appearing in the nude among strangers in public places."). "Indecent exposure" has been defined specifically by reference to the public nature of the act. *See Indecent Exposure*, Black's Law Dictionary (10th ed. 2014) ("An offensive display of one's body in public, esp. of the genitals; specif., the crime of deliberately showing one's sex organs in a place where this action is likely to offend people."). Consistent with the foregoing, Maine's indecent conduct statute has historically been employed to prosecute in-person public exposures. *See State v. Robbins*, 666 A.2d 85, 86 (Me. 1995); *State v. Long*, 577 A.2d 765, 765 (Me. 1990); *State v. Works*, 537 A.2d 221, 221-22 (Me. 1988); *State v. Smith*, 437 A.2d 639, 640-41 (Me. 1981).

[¶18] In 1995, the Legislature changed the title of the offense from "public indecency" to "indecent conduct" and added subsection (C). *See* P.L. 1995, ch. 72, § 2 (effective Sept. 29, 1995). Section 854(1)(C) provides, in relevant part, that a person commits indecent conduct if "[i]n a private place,

the actor exposes the actor's genitals with the intent that the actor be seen by another person in that private place under circumstances that the actor knows are likely to cause affront or alarm." 17-A M.R.S. § 854(1)(C). The Legislature thereby extended the reach of the statute from exposures by an actor visible to the outside domain—from a public place or *another* private place—to exposures in the private domain where the actor and the victim were in the *same* private place. Legislative testimony by the representative who proposed the 1995 amendment suggests that the Legislature intended to criminalize an in-person exposure that would otherwise escape prosecution because the actor and the victim were in the same private place. *See An Act to Prohibit Private Indecency: Hearing on L.D. 179 Before the J. Standing Comm. on Criminal Justice*, 117th Legis. (1995) (testimony of Rep. William F. Reed). The legislative record further indicates that the "affront or alarm" requirement was included to avoid criminalizing consensual private exposures. *See id.* (testimony of Marty McIntyre, Maine Coalition Against Sexual Assault).

[¶19] Except for minor revisions not relevant here, section 854(1)(B) has remained unchanged since its initial enactment. *Compare* P.L. 1975, ch. 499, § 1 (effective Mar. 1, 1976), *with* 17-A M.R.S. § 854(1)(B). The legislative history contains no affirmative indication that the Legislature

12

contemplated or intended that the indecent conduct statute could be used to prosecute an individual for distributing a nude photograph.

[¶20]    The Legislature has, however, specifically criminalized the dissemination of obscene photographs to minors—a Class C offense that appears more directly applicable to Legassie's conduct and weighs against the State's proposed interpretation. *See* 17 M.R.S. § 2911(1)(C), (D) (2016); *see also State v. Ray*, 1999 ME 167, ¶ 7, 741 A.2d 455 (stating that undefined statutory terms must be construed "consistent with the overall statutory context" (quotation marks omitted)).

[¶21]  We also note that the State's interpretation of section 854(1)(B), which could subject to criminal liability any individual seen exposing his or her genitals by another in person or in a photograph, would present serious constitutional problems because section 854(1)(B) contains no "affront or alarm" requirement.[5]   The State's construction of section 854(1)(B) could therefore not only criminalize private behavior between consenting adults, but also subject to prosecution individuals who appear in photographs, which

_____

[5] Although indecency statutes have generally withstood constitutional challenges, those statutes include elements that consider state of mind or consent—generally that the defendant's exposure cause offense, annoyance, or alarm.  *See State v. Whitaker*, 793 P.2d 116, 118 (Ariz. Ct. App. 1990); *People v. Randall*, 711 P.2d 689, 691-93 (Colo. 1985) (en banc); *State v. Bauer*, 337 N.W.2d 209, 210 (Iowa 1983); *State v. Bergen*, 677 A.2d 145, 146 (N.H. 1996); *Commonwealth v. Allsup*, 392 A.2d 1309, 1312 (Pa. 1978); *State v. Knight*, 285 S.E.2d 401, 404 (W. Va. 1981).  Such provisions have been held to remedy constitutional infirmities.  *See, e.g.*, *Whitaker*, 793 P.2d at 120.

could burden well-established free speech and due process rights. *See Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (recognizing two consenting adults' due process right to engage in homosexual acts in their private lives and striking down a criminal sodomy statute); *Reno v. ACLU*, 521 U.S. 844, 874 (1997) ("In evaluating the free speech rights of adults, we have made it perfectly clear that [s]exual expression which is indecent but not obscene is protected by the First Amendment." (alteration in original) (citation omitted) (quotation marks omitted)); *Miller v. California*, 413 U.S. 15, 26 n.8 (1973) ("[T]he States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior.").

[¶22] Ultimately, because we conclude that the statute does not apply to Legassie's conduct, it is unnecessary to speculate about the various ways in which an individual could commit the crime of indecent conduct. We simply conclude, considering the ambiguous legislative history, the rules of lenity and strict construction applicable to criminal statutes, and our obligation to avoid, if possible, an unconstitutional interpretation of a statute, that as reprehensible as Legassie's behavior was, section 854(1)(B) cannot be stretched to meet the facts of this case.[6] We hold that a digital photograph transmitted over the

---

[6] Whether Legassie could have legitimately been charged with disorderly conduct, 17-A M.R.S. § 501-A (2016), or disseminating obscene materials to a minor, 17 M.R.S. § 2911 (2016), is not before

14

internet is legally insufficient to constitute an "exposure" pursuant to section 854(1)(B) and accordingly vacate the convictions for Counts 9, 10, 11, 12, and 26. We remand for entry of a judgment of acquittal as to those counts.

B.     Best Evidence Rule

[¶23] Legassie also argues that the court erred in allowing the victims to testify from memory about the digital messages he sent them over Facebook Messenger.[7] He argues that the State should have introduced the messages in evidence if available, and the failure to do so contravened the best evidence rule, rendering the victims' testimony inadmissible.

[¶24] The trial court concluded that the best evidence rule did not apply to the messages because the State was not required to prove the specific words or content of the messages, but rather the "tone," "type," and "general import" of Legassie's communications with the victims. We disagree and begin with an analysis of the best evidence rule, and then we consider the implications for each of the remaining convictions at issue.

---

us. The State represented at oral argument that Legassie was not charged with visual sexual aggression against a minor because the victims were fourteen years of age or older. *See* 17-A M.R.S. § 256 (2016).

  [7] In light of our conclusion vacating the indecent conduct convictions, our analysis here is limited to the remaining convictions for attempted sexual exploitation of a minor (Counts 1, 2, and 6), attempted sexual abuse of a minor (Count 8), and sexual exploitation of a minor (Count 27) involving Victim A, Victim B, Victim D, and Victim E.

[¶25]  "An original writing . . . is required in order to prove its content unless these rules or a statute provides otherwise."  M.R. Evid. 1002.

> An "original" of a writing or recording means the writing or recording itself or any counterpart intended to have the same effect by the person who executed or issued it.  For electronically stored information, "original" means any printout—or other output readable by sight—if it accurately reflects the information.

M.R. Evid. 1001(d).

[¶26]  There are thus two requirements for the rule to apply: first, that the evidence sought to be proved is a "writing" and, second, that the contents of that writing are at issue.  *See* M.R. Evid. 1002, 1004(d) (stating that the rule does not apply where the writing "is not closely related to a controlling issue").  The content is at issue if "the party seeking to prove a fact is trying to prove what a particular writing, recording or photograph says or shows."  3 Francis Wharton, Wharton's Criminal Evidence § 15:4 (Barbara E. Bergman et al. eds., 15th ed. 2016).  "Whether the content is at issue is determined on a case-by-case basis."  *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 578 (D. Md. 2007) (interpreting the similarly-worded best evidence rule of the Federal Rules of Evidence, Fed. R. Evid. 1002).

[¶27]  The justification for the best evidence rule is that it "lessens the probability of inaccuracy through human or mechanical error and that it

promotes prevention of fraud." Field & Murray, *Maine Evidence* § 1002.1 at 562 (6th ed. 2007); *see also Dalton v. Commonwealth*, 769 S.E.2d 698, 703 (Va. Ct. App. 2015) ("As a legal term of art, the best evidence rule requires that where the contents of a writing are desired to be proved, the writing itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted." (quotation marks omitted)).

[¶28]  The best evidence rule applies not only to documents that are required to be in writing, such as a will, but also applies to acts with independent significance voluntarily *performed* in a writing—for example, when the claim or matter sought to be proved occurred solely in writing. *See* M.R. Evid. 1002 advisers' note to 1976 amend. ("Many situations arise where the parties choose to perform the event in writing although the law does not require it.  For example, a contract may be made or a notice given in writing. Here also the original must be produced or accounted for.").

[¶29]  The rule has exceptions that relieve a party of the obligation to produce the original writing to prove its content.  *See* M.R. Evid. 1004.  "[T]he original is not required if it: (1) was lost or destroyed, absent bad faith; (2) is unobtainable; (3) is in the control of the party against whom the document is offered; or (4) relates to a collateral matter."  *LDC Gen. Contr. v. LeBlanc*,

2006 ME 106, ¶ 7, 907 A.2d 802. We review the court's application of the best evidence rule for an abuse of discretion. *See id.* ¶ 8. We conclude that the Facebook messages were "writings," that the State sought to prove the content of those messages, and that the messages received by the Victims constituted "originals."

1. The Messages Are "Writings"

[¶30] The messages clearly fit within the broad definition of a "writing."[8] *See* M.R. Evid. 1001(a) ("A 'writing' consists of letters, words, numbers, or their equivalent set down in any form."); M.R. Evid. 1001 advisers' note to 1976 amend. ("[T]he rule includes sophisticated methods of data compilation, storage, and retrieval."); 2 McCormick on Evidence § 233 & n.9 (7th ed. 2016)

---

[8] A majority of state and federal courts, applying similarly-worded versions of the rule, have concluded that electronically-transmitted communications such as emails or text messages constitute writings and that when a party seeks to prove at trial what the communication said, the original or a copy must be produced or accounted for before secondary evidence may be admitted. *See United States v. Harry*, 927 F. Supp. 2d 1185, 1194-99, 1227 (D.N.M. 2013) (holding that the best evidence rule applied to text messages sent by the defendant to a witness containing admissions that he committed an assault the previous night), *modified on other grounds by* No. CR 10-1915 JB, 2013 U.S. Dist. LEXIS 74272 (D.N.M. May 13, 2013); *Rodriguez v. State*, 449 S.W.3d 306, 311-13 (Ark. Ct. App. 2014) (concluding that a picture of a text message, where there was evidence from the victim that the message had been deleted and testimony from a cellular representative that the original message contents were not stored by the company, complied with the rule); *State v. Espiritu*, 176 P.3d 885, 892-93 (Haw. 2008) (holding that threatening text messages sent by the defendant to the victim were a writing, but allowing testimony as to their content because evidence supported the conclusion that the messages were unavailable); *Laughner v. State*, 769 N.E.2d 1147, 1159 (Ind. Ct. App. 2002) (holding that the best evidence rule applied to messages sent in an internet chat room supporting a charge for attempted child solicitation), *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d 1201, 1206 n.9 (Ind. 2007) (*superseded by statute*, Ind. Code § 35-34-1-5 (2007)); *Dalton v. Commonwealth*, 769 S.E.2d 698, 703-04 (Va. Ct. App. 2015) (holding that the best evidence rule applied to a text message arranging a drug transaction).

18

(stating that "writing" is broadly defined to include digital evidence such as text messages).

2.     The Content of the Messages

[¶31]   In this case, the nature of Legassie's conduct and the evidence adduced at trial lead us to the inescapable conclusion that the State sought to prove the content of the messages.  Legassie is alleged to have committed the crimes with which he was charged entirely through the words communicated in the messages; it was therefore only by proving the content of the messages that the State could prove that Legassie "[k]nowing or intending that the conduct will be photographed . . . intentionally or knowingly employ[ed], solicit[ed], entice[d], persuade[d], use[d] or compel[led] another person, not that person's spouse, who is in fact a minor, to engage in sexually explicit conduct."  17-A M.R.S. § 282(1)(A); *cf. Laughner v. State*, 769 N.E.2d 1147, 1159 (Ind. Ct. App. 2002) (holding that the best evidence rule applied to messages sent in an internet chat room supporting a charge for attempted child solicitation).[9]

[¶32]   At trial, although the State did not have to prove that Legassie employed any particular legally operative words to prove each element of the

---

9  *Laughner* was abrogated on other grounds by *Fajardo v. State*, 859 N.E.2d 1201, 1206 n.9 (Ind. 2007).  *Fajardo* was itself later superseded by statute, Ind. Code § 35-34-1-5.

offenses, the evidence supporting the convictions—the victims' testimony—derived entirely from the victims' knowledge and recollection of the content of the messages. *Cf.* 3 Francis Wharton, Wharton's Criminal Evidence § 15:4 (illustrating that the best evidence rule does not bar testimony by a witness about facts set forth in a writing if the witness has independent personal knowledge of those facts that is not derived from a review of the writing). In other words, without describing the very content of the messages Legassie sent, the victims would not have been able to testify about what he communicated to them in the messages.

3.    The Messages are "Originals"

[¶33]  Each of the messages that the victims received is an "original" as set forth in M.R. Evid. 1001(d) in two respects. First, each message was a "counterpart intended to have the same effect by" the author, Legassie. M.R. Evid. 1001(d). Second, because each message constituted "electronically stored information," the rule treats "*any* printout" of such data as an "original," so long as the content of the printout "accurately reflects the information." *Id.* (emphasis added); *see also Bank of Am. v. Barr*, 2010 ME 124, ¶ 21 & n.4, 9 A.3d 816 (concluding that electronically-stored records created by a bank and

20

printed out by a third-party contractor met the definition of an "original" pursuant to Rule 1001).[10]

[¶34]  Depending on the content sought to be proved and the nature of the writing, multiple "originals" can be at issue in a single case.  *See LeBlanc*, 2006 ME 106, ¶ 9, 907 A.2d 802 (concluding that both an "original" credit card bill and annotated copies of the bill constituted an "original" because both were sought to be proved).  The fact that Legassie created the messages does not mean that the messages created and perhaps stored in Legassie's Facebook account are the only "originals."  As stated in Maine's leading treatise on evidence, "[t]he nature of an original in the sense used in the best evidence rule may be very different from the ordinary lay usage.  The layperson calls the paper first produced in chronological succession the original and later reproductions of the paper copies or duplicates.  *Under the rule, the chronology is not decisive.*  An original is the document the contents of which are to be proved."  Field & Murray, *Maine Evidence* § 1001.1 at 559 (emphasis added).

[¶35]  The focus of the State's proof, as elicited from the victims' testimony, was what Legassie communicated through written text in the

---

[10]  Accordingly, because Legassie does not dispute the accuracy of the printout of messages that Victim A received from Legassie that were admitted as Exhibit 1, the printout was an "original" for the purposes of the rule.

messages that the victims *received* through Facebook. Although it is accurate to state that the messages *originated* from Legassie's Facebook account, once the messages were sent, two "originals" were generated simultaneously—one retrievable from the sender's Facebook account and one retrievable from the recipient's account.[11] At the time that the messages were sent and received, they would have been electronically stored and accessible on any device with an internet connection with access to either Legassie's or the victims' Facebook accounts.

[¶36] An "original writing" is simply a shorthand term for the *best evidence* to prove the contents of a writing, when, as here, the contents are being challenged or questioned. At trial, the State offered the testimony of the victims' recollection of the content of the messages that the victims received to establish that Legassie "intentionally or knowingly employ[ed], solicit[ed], entice[d], persuade[d], use[d] or compel[led]" them "to engage in sexually explicit conduct." 17-A M.R.S. § 282(1)(A). The victims' testimony, recounted

---

[11] A number of courts have concluded that an electronic communication received from an opposing party is not merely a copy or duplicate, but rather constitutes an "original" unto itself. *See Greco v. Velvet Cactus, LLC*, No. 13-3514, 2014 U.S. Dist. LEXIS 87778, at *8 (E.D. La. June 27, 2014) (treating email printouts that reproduced text messages exchanged between the parties as an "original" for purposes of the rule); *Espiritu*, 176 P.3d at 892 (holding that text messages received by a victim that were sent by the defendant constituted an "original"); *Laughner*, 769 N.E.2d at 1159 (concluding that internet chat room messages received by an undercover police officer posing as a child, which were copied into a word processing document and printed, constituted "original" writings).

in their recollections nearly two years after Legassie sent and the victims received and read the messages, was clearly not the best evidence to prove their content.

[¶37]  Because Legassie's messages constituted writings and the State sought to prove their content, the State was required to introduce the original messages if available, or, in the alternative, make a showing that the messages could not be obtained before offering secondary evidence in the form of witness testimony.  *See* M.R. Evid. 1004.

4.     Exception to the Rule: M.R. Evid. 1004(c)

[¶38]  An original writing is not required to prove its content where "[t]he party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing."  M.R. Evid. 1004(c).  We have applied M.R. Evid. 1004(c) where the "original" writing is in the physical control of the party that lodges an objection based on the best evidence rule to secondary evidence regarding the writing's content. *See Graybar Elec. Co. v. Sawyer*, 485 A.2d 1384, 1387 (Me. 1985).  In *Sawyer*, the defendant objected to the admission of a carbon copy of a letter that the plaintiff had purportedly sent to the defendant.

*See id.* We concluded that the trial court did not abuse its discretion in admitting a carbon copy of the letter because the "original" letter was sent to the defendant, and assuming that he received it, the defendant had control of the only original, warranting application of the Rule 1004(c) exception, which allowed the content of the letter to be proved by the carbon copy. *Id.* at 1387-88.

[¶39] "All preliminary matters which must be established to make secondary evidence admissible [pursuant to Rule 1004] are questions of fact for the [trial] court . . . ." *State v. Lewis*, 373 A.2d 603, 611 (Me. 1977). The burden of proof to establish that a Rule 1004 exception applies is on the party seeking to prove the content of the original, here, the State. *See Barrows v. IRS*, 231 B.R. 446, 450 (D.N.H. 1998). The State thus had the burden to establish that (1) Legassie had "control of the original," and that (2) he was placed on notice "by pleadings or otherwise" that the State would seek to prove the content of the original at trial. *See* M.R. Evid. 1004(c).

[¶40] Rule 1004(c) does not apply in this case as a matter of fact and law, for several reasons. First, the trial court did not make the necessary findings for that exception to apply, and even if those findings were made, they would lack record support. Additionally, unlike in *Sawyer*, Legassie was not in control

of the only "original." *See Sawyer*, 485 A.2d at 1387. The State sought to prove the content of the messages that the victims *received* from Legassie, and those messages also meet the definition of an "original." *See* M.R. Evid. 1001(d). Consistent with the plain language of the Maine Rules of Evidence, the State was required to produce the original messages or demonstrate an exception to the best evidence rule to be able to try to prove the content of the messages through the victims' testimony. Finally, given the burden of proof and discovery in criminal cases, and the constitutional protections against self-incrimination, Legassie was not obligated to produce his messages before asserting an objection based on the best evidence rule.

[¶41] In sum, the State sought to prove the content of the messages that the victims received. Those messages constituted "originals," *see* M.R. Evid. 1001(d), that were not in Legassie's "control."

5.  Application to Victim A, Victim B, Victim D, and Victim E[12]

[¶42] The best evidence rule applies to the Facebook messages, but the consequences with respect to each conviction vary. The State introduced, and the court admitted, a printout from Victim A's computer of the messages that

---

[12] We do not analyze the trial court's application of the best evidence rule as to Victim C because the only conviction involving messages Legassie sent to her was for indecent conduct (Count 11). *See supra* n.7.

Victim A exchanged with Legassie.  At trial, Legassie used the messages to cross-examine and impeach Victim A's testimony.  Legassie argues that the State was required to produce the "original" messages from *his* device or Facebook account, and that Victim A should not have been permitted to testify about the content of the messages.  As we have already discussed, the message on Victim A's device is an "original" of the content of the message that she received.  To the extent that Legassie argues that the printout is not an "original" and the trial court should not have admitted it, there was no error because Legassie does not dispute the accuracy of the content of the printout of the messages.  *See State v. Degen*, 552 A.2d 2, 4 (Me. 1988) (holding that the admission of testimony that violated the best evidence rule was harmless error because the defendant did not allege that the photocopied notes summarizing test results were inaccurate).  In contrast, with respect to the other victims, the messages were not produced and admitted in evidence, and Legassie disputes their contents.

[¶43]  As to Victim B, although the court ultimately concluded that the rule did not apply, the court also found that the messages were no longer in existence or available and stated that Victim B's testimony was admissible

pursuant to M.R. Evid. 1004.[13]  Because there was competent record evidence to support the conclusion that the messages met the exception for writings that are "lost or destroyed," *see* M.R. Evid. 1004(a), the court did not abuse its discretion in permitting Victim B to testify about the content of the messages. *See State v. Robinson*, 2015 ME 77, ¶ 23, 118 A.3d 242 ("Once the requirements of M.R. Evid. 1004 [are] met, any type of secondary evidence, not otherwise inadmissible, becomes admissible." (alteration in original) (quotation marks omitted)); *State v. Young*, 560 A.2d 1095, 1096-97 (Me. 1989) (affirming a trial court's admission of testimony about the contents of love letters sent by defendant to victim because the evidence met the M.R. Evid. 1004(a) exception).

[¶44]  The court's admission of Victim A's messages and Victim B's testimony complied with M.R. Evid. 1002 and 1004.  There was therefore sufficient competent evidence for the court to find Legassie guilty of Counts 1, 2, and 8.

[¶45]  We reach a different conclusion as to Victims D and E.  Each testified from memory about the content of the messages that she received

---

[13]  The court stated "[i]n the event one might conclude that the 'best evidence rule' was implicated, the court is satisfied that the 'second best evidence' of content that [Victim B] provided would be admissible pursuant to M.R. Evid. 1004."

from Legassie. Legassie made a timely objection under the best evidence rule in each instance, and the trial court overruled the objections. Unlike with Victim A, printouts of Legassie's messages received by Victims D and E were not produced or admitted in evidence, and unlike with Victim B, the court did not expressly find that those messages were "lost or destroyed." *See* M.R. Evid. 1004(a). The trial court instead concluded that the rule did not apply at all, and made no preliminary factual findings that would excuse the State's failure to introduce the messages and permit the use of secondary evidence. *See* M.R. Evid. 1004(a); *Lewis*, 373 A.2d at 611 ("All preliminary matters which must be established to make secondary evidence admissible [pursuant to Rule 1004] are questions of fact for the [trial] court . . . .").

[¶46] As a general rule, where, as here, neither party requested further findings of fact, we will assume that the trial court made any findings necessary to support the judgment, provided that the findings are supported by competent record evidence. *See* M.R.U. Crim. P. 23(c); *State v. Brown*, 2017 ME 59 ¶ 17, 158 A.3d 501. The circumstances of this case, however, prevent us from assuming that such findings were made as to the availability of the messages received by Victims D and E. Because the court expressly concluded that the best evidence rule did not apply, which would necessarily include any

28 of 31

exception under M.R. Evid. 1004, we can only assume that the court chose not to consider, and thus would not have made, any findings that the messages sent by Legassie to Victims D and E were lost, destroyed or otherwise unavailable. *See* M.R. Evid. 1004(a); *cf Spangler v. Memel*, 498 P.2d 1055, 1063 n.10 (Cal. 1972) ("Since we have concluded that section 580b [of the California Code of Civil Procedure] does not apply, we need not consider possible exceptions to its applicability."); *Pa. Mfrs. Indem. Co. v. Air Power, Inc.*, No. 1:13CV217, 2014 U.S. Dist. LEXIS 52343, at *25 (M.D.N.C. Apr. 16, 2014) ("Because the . . . rule does not apply in this case, the Court need not consider whether the . . . exception to the . . . rule applies.").

[¶47]  Even if the application of Rule 23(c) is appropriate here because a request for further findings was not made, a close review of the record reveals that there is insufficient evidence to support an express or implied finding, pursuant to M.R. Evid. 1004(a), that the messages Victim D allegedly received from Legassie were lost or destroyed.  Because the testimony of Victim D was the only direct evidence that Legassie committed the offenses of sexual exploitation of a minor and attempted sexual exploitation of a minor, and because that testimony was admitted in contravention of the best evidence rule, the State failed in its proof.  We accordingly vacate the remaining

conviction involving Victim D, attempted sexual exploitation of a minor (Count 6) and remand for entry of a judgment of acquittal as to that conviction. *See State v. Sudsbury*, 2016 ME 25, ¶ 5, 132 A.3d 863; *State v. Howes*, 432 A.2d 419, 425-26 (Me. 1981).

[¶48] In contrast, there is some evidence in the record that may bear upon the availability of the messages sent to Victim E.[14] However, because the court affirmatively determined that the best evidence rule did not apply, we cannot speculate whether, had it applied the Rule, the court would have permitted the use of secondary evidence or whether it would have reached a different decision as to the charge of sexual exploitation of a minor (Count 27). Accordingly, we vacate the remaining conviction on that charge involving Victim E and remand to the trial court to review the record in this case to determine whether, applying the best evidence rule, M.R. Evid. 1001, 1002, 1004, the State met its burden to prove that Legassie committed that offense.

C.    Sentencing

[¶49] Because we vacate the convictions on Counts 6, 9, 10, 11, 12, and 26 and remand for entry of a judgment of acquittal on those counts, and also

---

[14] That evidence included testimony that Victim E, assisted by a law enforcement officer, had attempted and failed to recover her messages with Legassie from her cell phone, and that Victim E discovered that Legassie had blocked her access to his messages.

vacate the conviction on Count 27 and remand for the court to review the record and determine whether the State met its burden as to the charge in Count 27, we also remand this case with instructions for the trial court to determine whether those convictions may have influenced the court's sentencing as to Counts 1, 2, and 8. If so, we further direct the court to resentence Legassie "after a new sentencing proceeding at which both [Legassie] and the State may be heard." *State v. Lacourse*, 2017 ME 75, ¶ 17, 159 A.3d 847 (quotation marks omitted).

The entry is:

> Judgment affirmed as to Counts 3, 4, 5, 7, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, and 29. Judgment vacated as to Counts 6, 9, 10, 11, 12, 26 and 27. The matter is remanded with instructions to (i) enter a judgment of acquittal as to Counts 6, 9, 10, 11, 12 and 26; (ii) enter a judgment as to Count 27 after reviewing the trial record applying the best evidence rule to determine whether the State met its burden of proof as to the offense charged in Count 27; and (iii) reconsider the sentence and, if warranted, resentence defendant on Counts 1, 2, and 8 consistently with this opinion.

Alan F. Harding, Esq. (orally), Hardings Law Office, Presque Isle, for appellant Andrew J. Legassie

James Mitchell, Assistant District Attorney (orally), Prosecutorial District 8, Caribou, for appellee State of Maine

Aroostook County Superior Court docket number CR-2014-190
FOR CLERK REFERENCE ONLY